**Roger SILLER, Respondent,**

v.

**Glenda RIVITUSO–SILLER, Appellant.**

**No. ED 82002.**

Missouri Court of Appeals, Eastern District, Division Four.

March 16, 2004.

Daniel R. Haltenhof, Clayton, MO, for appellant.

Mark D. Hirschfeld, Clayton, MO, for respondent.

PATRICIA L. COHEN, Judge.

Glenda Rivituso ("Wife") appeals the Judgment of Dissolution of Marriage entered by the Circuit Court of the City of St. Louis. More specifically, Wife claims the trial court erred in: 1) admitting an antenuptial agreement offered by Roger Siller ("Husband") into evidence when he failed to plead its existence in his Petition for Dissolution or as an affirmative defense in his Answer to Wife's Cross–Petition; 2) admitting an antenuptial agreement into evidence in contravention of the trial court's previous order striking Husband's pleadings, barring him from offering evidence at trial and entering an interlocutory default judgment; and 3) denying maintenance based on the improperly admitted antenuptial agreement. We reverse and remand.

## I. Background

Husband and Wife were married for approximately eleven years and had no children. On July 21, 2000, Husband filed a Petition for Dissolution. Wife filed an Answer and Cross–Petition for Dissolution to which Husband did not respond. In her Petition for Dissolution, Wife alleged that she was unemployed and in need of maintenance.

Prior to trial, Wife filed a Motion for Contempt against Husband for his failure to comply with numerous court orders. In

January 2002, following a hearing, the trial court warned Husband that his pleadings would be stricken and he would be subject to further sanctions if he failed to comply with outstanding court orders. Thereafter, Wife filed a Motion for Sanctions and to Strike Pleadings of Petitioner. The motion was called, heard, and sustained. The trial court struck Husband's pleadings and barred him from offering any evidence at trial unless he complied with various court orders by a certain date.

In March 2002, Wife filed a Motion for Interlocutory Order of Default detailing Husband's failure to comply with the trial court's earlier order in response to the Motion for Sanctions. On April 11, 2002, the trial court heard and granted Wife's motion. As a sanction, the trial court "barred Husband from testifying or offering evidence" at trial and entered the default judgment.

The parties commenced trial in this matter on May 24, 2002. Prior to witness testimony, the trial court reiterated to Husband's counsel that "your client is banned from testifying or offering any evidence at the hearing on this cause." In response, Husband's counsel stated that he planned to cross-examine Wife about an antenuptial agreement. The trial court agreed that Husband's counsel would be permitted to cross-examine Wife about an antenuptial agreement. In her direct testimony, Wife testified at length about, among other things, the nature of the marital property, her financial situation, Husband's financial situation, Husband's abusive treatment and abuse of drugs and alcohol. Wife did not discuss the antenuptial agreement in her direct testimony.

Following Wife's testimony, Husband's counsel cross-examined Wife. The first mention of the antenuptial agreement prompted an objection from Wife's counsel:

Q: Okay. Now also, Ms. Rivituso, before you got married did Roger raise an issue about you entering into a prenuptial or antenuptial agreement with him.

MR. HALTENHOF: Judge, at this time I need to object on the grounds that this is something that is not before the Court, it hasn't been pled and/or raised in any of the pleadings and I don't believe it's before the Court

. . .

MR. HIRSCHFELD: Well, Your Honor, this has always been a known issue.

. . .

There's no surprise bringing it up at this time.

THE COURT: I'm going to allow this line of questioning.

. . .

MR. HALTENHOF: Judge, again, I'm going to just can I enter a continuing objection to this whole line of questioning.

THE COURT: So noted.

Thereafter, Counsel for Husband marked the antenuptial agreement as Petitioner's Exhibit A, showed it to Wife and discussed it in detail.

At the conclusion of Wife's testimony, Husband's counsel offered Petitioner's Exhibit A for admission. Over the objection of Wife's counsel, the trial court admitted Petitioner's Exhibit A, stating:

Well, I understand your objection Mr. Haltenhof, **I'm going to, in fact, suspend my April 11th order for the moment and receive it** so that the record is complete. Obviously, you've had plenty of direct and cross-examination testimony on it so I think the Court of Appeals—should this case be appealed, for them to have it, so I'm going to

accept it for those reasons. (emphasis added).

Subsequent to the admission of Exhibit A, Husband's counsel requested leave to amend the pleadings to conform "with the evidence that there was a prenuptial agreement between the parties...." Wife's counsel objected declaring that "the pleadings have already been stricken...." Nevertheless, the trial court allowed the amendment.

In August 2002, the trial court issued Findings of Fact, Conclusions of Law and Order and Judgment of Dissolution of Marriage. The trial court concluded, among other things, that "Respondent lacks sufficient present income and financial resources to provide for her own maintenance, however, she is barred from being awarded maintenance per the parties Antenuptial Agreement."

## II. Standard of Review

We review the trial court's admission of evidence relating to the antenuptial agreement as well as the antenuptial agreement itself under an abuse of discretion standard. In particular, where we are analyzing a trial court's actions in the context of a response to non-compliance with pre-trial discovery or other pre-trial orders, we consider whether, under the totality of the circumstances, the challenged act has resulted in prejudice or unfair surprise. *Ellis v. Union Electric Company*, 729 S.W.2d 71, 74–75 (Mo.App. E.D.1987). We keep in mind that "[e]xercise of this discretion should be directed toward the accomplishment of fundamental fairness and the avoidance of unfair surprise." *Id.* at 76.

## III. Discussion

Applying these principles, we consider whether the trial court's decision to permit Husband to introduce the antenup-

tial agreement was an abuse of discretion. The Western District considered an analogous issue in *Simpkins v. Ryder Freight System, Inc.*, 855 S.W.2d 416 (Mo.App. W.D.1993). In *Simpkins*, the trial court struck defendant Ryder's pleadings and entered a default judgment as a sanction for serious pre-trial violations. The trial court set the matter for trial on the issue of the amount of damages only. However, at the conclusion of the trial, the trial judge, on his own initiative, vacated the previous order of default and directed plaintiff to submit verdict directors requiring the jury to determine liability issues. In reversing the judgment and remanding for new trial, the Western District held:

> The action of the trial court in vacating the interlocutory judgment of default sanction immediately before submission of the case was neither orderly, logical, nor fair. It was prompted by no trial necessity, done without reason, and radically distorted the issues and the burdens of the parties as to them. It was an abuse of discretion. (citation omitted). The action moreover, was without real notice or opportunity for the affected parties to be heard. (citation omitted).
>
> . . .
>
> There is no intimation in the record that the decision to vacate the judgment of default was to correct an error, or to undo an oppressive order, or for any other end of the administration of justice.
>
> . . .
>
> The consequences were that the pleadings of defendant Ryder were reinstated, the issue of liability reintroduced, and the burden to prove the claim reimposed....

*Id.* at 421.

As in *Simpkins*, at the close of evidence, the trial court here vacated its interlocu-

tory order of default judgment in order to admit the antenuptial agreement. Moreover, once the order was vacated, the trial court permitted Husband to amend his previously stricken pleadings to assert the antenuptial agreement as a bar to maintenance. Despite the fact that over the course of two years of litigation, Husband's conduct was so egregious that his pleadings were stricken, he was barred from offering evidence, and default judgment was entered, the trial court, with virtually no explanation or notice, vacated its April 11th order and allowed Husband to offer evidence on an issue that was never asserted in his pleadings.

Husband argues that because Wife was aware of the antenuptial agreement before trial she suffered no prejudice. Husband's argument is disingenuous. There is no dispute that Wife was operating under the assumption that Husband would not be able to offer any evidence at trial. Wife's counsel immediately objected to discussion of the antenuptial agreement and its admission. Wife's counsel's behavior at trial is entirely consistent with a belief that Husband would not be allowed to admit any evidence, including the antenuptial agreement. Moreover, there was no reasonable basis for Wife to anticipate that not only would the trial court vacate the April 11th order at the close of evidence, but also would permit Husband to amend his previously stricken Petition to assert the antenuptial agreement as a bar to maintenance.

Under the facts and circumstances of this case, we believe the trial court abused its discretion when it set aside the interlocutory order of default judgment and admitted evidence offered by Husband regarding the parties' antenuptial agreement. We therefore reverse that portion of the trial court's judgment which barred Wife from maintenance on the basis of the antenuptial agreement and remand for a determination of the propriety of maintenance without regard to any evidence offered by Husband, including specifically, evidence of an antenuptial agreement.

BOOKER T. SHAW, P.J., and LAWRENCE G. CRAHAN, J., concur.