**STATE ex rel. Thomas DIEHL, Relator,**

v.

**Honorable John F. KINTZ, Judge of the Circuit Court of St. Louis County, Missouri, Respondent.**

No. ED 84905.

Missouri Court of Appeals,
Eastern District,
Writ Division Two.

March 8, 2005.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 11, 2005.

Application for Transfer Denied
May 31, 2005.

Michael D. Quinlan, St. Louis, MO, for relator.

Jeffrey B. Hunt, Albert A. Michenfelder, Jr., St. Louis, MO, for respondent.

Bruce A. Morrison, Denise D. Lieberman, St. Louis, MO, for amicus curiae.

LAWRENCE E. MOONEY, Presiding Judge.

In December of 2003, Thomas Diehl found himself embroiled in a dispute with a company, Fred Weber, Inc. Diehl went to a public hearing held at a local high school to oppose an application for a trash transfer station. The company owned a sanitary landfill and also the property where a proposed trash transfer station was to be built and operated. Further, the company was the "managing member" of F.W. Disposal South, LLC, which had filed an application with the county health department to construct and operate the trash transfer station. The county health department, as required by law, held a public hearing regarding the proposed trash transfer station.

Before, during, and after the hearing, Diehl distributed a handbill to many members of the public. Because this flyer is at the heart of this dispute, we reprint it in its entirety.[1]

STOP FRED WEBER, INC.

THREE THINGS YOU CAN
DO TO FIGHT

THE TRASH TERRORISTS.

1. Write to Dr. Jacquelynn Meeks, Director

St. Louis County Department of Health

111 South Meramec Ave.

Clayton, MO 63105

*jacquelynn meeks@stlouisco.com*

and Mr. Charlie A. Dooley, County Executive

St. Louis County Government Center

41 South Central Ave.

Clayton, MO 63105

*cdooley@stlouisco.com*

and Mr. Glen Powers, Director

St. Louis County Department of Planning

41 South Central Avenue

Clayton, MO 63105

*glenn powers@stlouisco.com*

2. If you currently use Midwest Waste, Excel, or Trash Taxi for your trash service, please consider a firm which does not use Fred Weber's landfill— Throw N Go, Bob's Disposal, Kraemer Hauling, or Diamond (aka IESI).

3. Contribute to Our Fight. Make your check payable to:

Subdivision Fee Collectors, Inc.

12570 Hibler Woods

St. Louis, MO 63141

(In the memo field write "Stop Fred Weber Fund")

DON'T TRASH SOUTH COUNTY

The company filed suit twelve days after the public hearing claiming that the flyer was defamatory. In February of 2004, the company filed an amended petition, which added Diehl as a defendant and is the pleading at issue in this appeal.[2] This

---

1. A scanned copy of the flyer appears in the appendix of this opinion.

2. In the original petition, the company named Subdivision Fee Collectors, Inc. and certain

unknown and unidentified John Does as defendants. The company dismissed without prejudice Subdivision Fee Collectors, Inc. and

pleading contains four counts. The first two counts plead actions in defamation and the third count pleads a civil conspiracy to defame. Each of these three counts requests actual damages in excess of $25,000.00, punitive damages of $5,000,000.00, and an award for costs, expenses, and attorneys' fees. The final count requests an injunction that Diehl and others be enjoined from distributing the flyer and ordered to deliver any remaining flyers to the court for destruction.

Diehl filed a motion to dismiss, which was denied by the trial judge. Diehl then sought relief by extraordinary writ. This Court issued its preliminary writ in prohibition.

■ Review of a motion to dismiss for failure to state a claim is solely a test of the adequacy of a plaintiff's petition. *Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993). It is assumed that all of the plaintiff's averments are true and the plaintiff is liberally granted all reasonable inferences therefrom. *Id.*

■ In *Nazeri*, the Missouri Supreme Court set forth certain standards when deciding if a statement is defamatory. *Id.* at 311. First, in determining whether a statement of fact is defamatory, the words must be stripped of any pleaded innuendo and construed in their most innocent sense. *Id.* The alleged defamatory words must also be considered in context, and the words are given their plain and ordinarily understood meaning. *Id.* The alleged defamatory words " 'are to be taken in the sense which is most obvious and natural and according to [the] ideas they are calculated to convey to those to whom they are addressed.' " *Id.* Although these standards are not "absolutely consistent," "they should be read together." *Id.* Whether the language at issue is defama-

tory is a question of law. *Sterling v. Rust Communications*, 113 S.W.3d 279, 281 (Mo.App. E.D.2003).

■ The Court in *Nazeri* also analyzed constitutionally protected expressions of opinion. *Id.* at 314. "The First Amendment's guarantee of freedom of speech makes expressions of opinion absolutely privileged." *Id.* However, the United States Supreme Court has rejected the notion that there is a wholesale defamation exemption for anything that might be labeled opinion, noting that expressions of opinion may often imply an assertion of objective fact. *Id.* (citing *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18, 110 S.Ct. 2695, 2705, 111 L.Ed.2d 1 (1990)). The test for an ostensible opinion is whether a reasonable factfinder could conclude that the statement implies an assertion of objective fact. *Id.* "The issue of falsity relates to the *defamatory* facts implied by a statement—in other words, whether the underlying statement about the plaintiff is demonstrably false." (Emphasis in original). Furthermore, "neither 'imaginative expression' nor 'rhetorical hyperbole' is actionable as defamation." *Id.* In addition, a statement may only suggest to the ordinary reader that the defendant disagrees with the plaintiff's conduct and used pejorative statements or vituperative language to express this disapproval. *Henry v. Halliburton*, 690 S.W.2d 775, 788–89 (Mo. banc 1985). "Courts should also examine the statements themselves to determine whether they are too imprecise." *Id.* at 789.

■ We note initially the imprecise nature of the phrase "trash terrorists," which the company posits as defamatory. Exactly what constitutes a "trash terrorist" is unclear. Indeed, given the imprecise nature of the phrase, it is uncertain how the

truth or falsity of being a "trash terrorist" could be determined.[3] The imprecise nature of the phrase "trash terrorists" notwithstanding, the phrase is not defamatory as a matter of law under the applicable standards. The company focuses on the word "terrorist." But the term "terrorist" cannot be considered in isolation. As previously stated, the allegedly defamatory words must be taken in context. The flyer was distributed before, during, and after a public hearing regarding the proposed trash transfer station. The flyer asks people to write to certain county government officials, to consider changing trash services, and to make a contribution. Certainly, if the flyer was factually claiming that the company kills and injures people, it would not urge the reader to merely write to the head of the St. Louis County Department of Planning. It is clear that the flyer is recommending action to oppose the proposed trash transfer station. Further, the flyer concludes by stating "DON'T TRASH SOUTH COUNTY." The flyer is conveying the message that approval of the trash transfer station would have a negative impact on South County. Taken in context, the use of the phrase "trash terrorists" reflects the writer's staunch opposition to the proposed trash transfer station.

■ In addition, the phrase "trash terrorists" is properly characterized as imaginative expression or rhetorical hyperbole. Again, taken in context and considering the surrounding circumstances, a reader of the flyer would not believe that the company is a terrorist. Rather, the reader would recognize the language as an epithet used to voice opposition to the proposed trash transfer station. Neither imaginative expression nor rhetorical hyperbole can support a claim for defamation.[4] *Nazeri*, 860 S.W.2d at 314. The company's petition fails to state a claim for defamation.[5]

■ The company's claim of civil conspiracy is based on its defamation claims. A civil conspiracy claim is not itself actionable in the absence of an underlying wrongful act or tort. *Duggan v. Pulitzer Publishing Co.*, 913 S.W.2d 807, 811 n. 1 (Mo.App. E.D.1995). Because the compa-

**3.** The company's amended petition states that the flyer "was and is wholly false in that [the company] is not a terrorist, [the company] is not fanatical, [the company] has not killed or injured people at any time and [the company] does not hate the United States."

**4.** In addition to "Libel" and "Slander," the company's amended petition uses the terms "Trade Libel," "Business Defamation," and "Disparagement." The tort of injurious falsehood has been referred to by various names including trade libel and commercial disparagement. *Cuba's United Ready Mix, Inc. v. Bock Concrete Foundations, Inc.*, 785 S.W.2d 649, 651 (Mo.App.1990). Defamation analysis applies to the tort of injurious falsehood. *Kennedy v. Microsurgery and Brain Research Institute*, 18 S.W.3d 39, 43–44 (Mo.App. E.D. 2000).

**5.** The company alleged in its petition that "certain Defendants made and uttered the statements contained in the offending flyer or similar statements, in words or in substance, orally on repeated occasions to members of the public" and "on several other occasions orally, certain Defendants maliciously spoke of and concerning [the company] in a disparaging, false and defamatory manner to members of the public, the press and the government." Missouri requires fact-pleading and for a claim of slander there must be certainty as to what is charged as the slander. Rule 55.05; *Nazeri*, 860 S.W.2d at 313. The company merely alleges that there were "similar statements" as the flyer and sets forth nothing else other than the defendants speaking about the company in a disparaging manner. The latter allegation lacks the required specificity for a slander claim. As for the allegation that certain defendants made similar remarks as those in the flyer, we hold today that those words are not defamatory.

ny's defamation claims fail to state a cause of action, the civil conspiracy claim also fails. *Gettings v. Farr*, 41 S.W.3d 539, 542 (Mo.App. E.D.2001). For the same reason, the company is not entitled to injunctive relief. The company's petition fails to state a claim upon which relief can be granted.

 We now consider whether issuing an extraordinary writ is a proper remedy in this case. We need not address amici's contention that the company's action is a SLAPP suit to determine whether an extraordinary writ should issue.[6] Prohibition is a discretionary writ. *State ex rel. Linthicum v. Calvin*, 57 S.W.3d 855, 856 (Mo. banc 2001). Prohibition may be appropriate to prevent unnecessary, inconvenient, and expensive litigation. *Id.* at 857; *State ex rel. Springfield Underground, Inc. v. Sweeney*, 102 S.W.3d 7, 8–9 (Mo. banc 2003); *State ex rel. Police Retirement System of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994); *State ex rel. Griffin v. Belt*, 941 S.W.2d 570, 572 (Mo.App. W.D.1997); *State ex rel. City of Marston v. Mann*, 921 S.W.2d 100, 101 (Mo.App.S.D.1996); *State ex rel. Anheuser–Busch Inc. v. Mummert*, 887 S.W.2d 736, 737 (Mo.App. E.D.1994). In exercising our discretion to issue a writ, however, we may consider the chilling impact that might be suffered in public discourse if the underlying meritless action were allowed to proceed.

 The alleged defamation occurred before, during, and after a public hearing on the proposed trash transfer station. Public hearings are conducted in part to encourage public discourse. Further, the free exchange of ideas between citizens and government is a hallmark of democracy. The Missouri Legislature, in enacting section 537.528 in 2004, has recognized the importance of expedited judicial consideration and prevention of unnecessary litigation expenses for actions seeking money damages from "a person for conduct or speech undertaken or made in connection with a public hearing or public meeting...."[7] Although this statute was not in

6. SLAPP is an acronym for strategic lawsuits against public participation, and lawsuits that are brought primarily in retaliation for activity in opposition to a plaintiff's business interests have been referred to as SLAPP suits. David J. Abell, *Exercise of Constitutional Privileges: Deterring Abuse of the First Amendment—"Strategic Lawsuits Against Political Participation"*, 47 SMU L.Rev. 95 (1993).

7. Section 537.528 became effective in August 2004, and provides in part:

1. Any action seeking money damages against a person for conduct or speech undertaken or made in connection with a public hearing or public meeting, in a quasi-judicial proceeding before a tribunal or decision-making body of the state or any political subdivision of the state is subject to a special motion to dismiss, motion for judgment on the pleadings, or motion for summary judgment that shall be considered by the court on a priority or expedited basis to ensure the early consideration of the issues raised by the motion and to prevent the unnecessary expense of litigation. Upon the filing of any special motion described in this subsection, all discovery shall be suspended pending a decision on the motion by the court and the exhaustion of all appeals regarding the special motion.

2. If the rights afforded by the section are raised as an affirmative defense and if a court grants a motion to dismiss, a motion for judgment on the pleadings or a motion for summary judgment filed within ninety days of the filing of the moving party's answer, the court shall award reasonable attorney fees and costs incurred by the moving party in defending the action. If the court finds that a special motion to dismiss or motion for summary judgment is frivolous or solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney fees to the party prevailing on the motion.

3. Any party shall have the right to an expedited appeal from a trial court order on the special motions described in sub-

effect to grant Diehl an immediate remedy, the same concerns that animated the legislature in enacting this statute may guide the exercise of our discretion in issuing a writ.

We disagree with the company's claim that issuing a writ of prohibition will open the floodgates in defamation cases. Rather, we hold that, under the circumstances in this particular case, issuing a writ of prohibition is the proper remedy. Accordingly, the preliminary order in prohibition is made absolute. The trial judge is prohibited from any further action in this case other than dismissing the company's petition for failure to state a claim upon which relief may be granted.[8]

CLIFFORD H. AHRENS, J., and BOOKER T. SHAW, J., concurs.

section 2 of this section or from a trial court's failure to rule on the motion on an expedited basis.

8. The company's motion to strike Diehl's reply brief is denied.

# STOP FRED WEBER, INC.

## THREE THINGS YOU CAN DO TO FIGHT THE TRASH TERRORISTS

1. Write to Dr. Jacquelynn Meeks, Director
 St. Louis County Department of Health
 111 South Meramec Ave.
 Clayton, MO 63105
 jacquelynn_meeks@stlouisco.com

 and Mr. Charlie A. Dooley, County Executive
 St. Louis County Government Center
 41 South Central Ave.
 Clayton, MO 63105
 cdooley@stlouisco.com

 and Mr. Glenn Powers, Director
 St. Louis County Department of Planning
 41 South Central Avenue
 Clayton, MO 63105
 glenn_powers@stlouisco.com

2. If you currently use Midwest Waste, Excel, or Trash Taxi for your trash service, please consider a firm which does not use Fred Weber's landfill – Throw N Go, Bob's Disposal, Kraemer Hauling, or Diamond (aka IESI).

3. Contribute to Our Fight. Make your check payable to:

 Subdivision Fee Collectors, Inc.
 12570 Hibler Woods
 St. Louis, MO 63141

 

 (In the memo field write "Stop Fred Weber Fund")

# DON'T TRASH SOUTH COUNTY