The HERTZ CORPORATION,
Respondent,

v.

RAKS HOSPITALITY, INC., Appellant.

No. ED 85454.

Missouri Court of Appeals,
Eastern District,
Division One.

April 18, 2006.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 1, 2006.

Application for Transfer Denied
Aug. 22, 2006.

Naren Chaganti, Los Angeles, CA, for appellant.

Beth C. Boggs, St. Louis, MO, for respondent.

CLIFFORD H. AHRENS, Judge.

RAKS Hospitality, Inc. ("RAKS") appeals from the judgment of the trial court following a jury verdict in favor of Hertz Corporation ("Hertz") on its claim of unjust enrichment and a directed verdict in favor of Hertz on RAKS's counterclaims for tortious interference and prima facie tort.[1]

In the late 1990's Hertz purchased a portion of land owned by RAKS, which owned and operated a Days Inn motel franchise at 4545 Woodson Road in St. Louis County, Missouri. In 1999, 2000, and 2001, St. Louis County ("County") sent the property tax bill for the property owned by RAKS at 4545 Woodson Road ("4545 Woodson") to RAKS Hospitality, Inc., c/o The Hertz Corporation, 3609 Smith Barry Road, Arlington, Texas. This is the address of James McElroy, a property tax consultant for Hertz. Hertz paid the real property tax on RAKS's property at 4545 Woodson for the years 1999, 2000, and 2001 to County. RAKS also paid the real property tax on 4545 Woodson in 1999, but did not pay the property tax for 2000 or 2001, and purportedly received no notices or bills for those two years. In 2002, Hertz conducted an internal audit and discovered that it had mistakenly paid the taxes for 4545 Woodson for 1999, 2000, and 2001.

In October 2002, Hertz requested a refund from County. County refunded the payment made by Hertz for the 1999 taxes because of the double payment, but refused to refund the payments for 2000 and 2001.[2] County subsequently refunded the 2001 payment to Hertz following an amendment to the statute of limitations which extended the period for which a refund could be claimed from one year to three years.

In December 2003, Hertz filed suit against RAKS. Hertz asserted that it mistakenly paid taxes for 1999 and 2000 to County for 4545 Woodson, which was owned by RAKS, which County refused to

---

[1] RAKS requested a jury trial on its legal claims, and the court tried both legal and equitable claims to a jury.

[2] As of October 2002, the statute of limitations for refunds for property taxes improperly paid was one year.

refund. Hertz contended that RAKS knew or should have known that it owed real property taxes to County for 4545 Woodson for those years, but made no inquiry regarding why it had not received a tax bill. Hertz averred that RAKS had been unjustly enriched by receiving the benefit of it inadvertently paying RAKS's tax bills for 1999 and 2000, that Hertz had not made those payments gratuitously and would not have made them had it realized that it was paying the taxes owed by RAKS rather than owed by it. Hertz further asserted that despite its demand for payment to RAKS, RAKS has retained the benefit of Hertz's payment of the taxes, which is inequitable. Hertz requested restitution for the amounts that it paid to County for the taxes on the property owned by RAKS. RAKS filed a counterclaim, subsequently amended, asserting that Hertz tortiously interfered with RAKS' business with the Assessor of County, which resulted in increased real property taxes on the property, instead of the reductions in assessments that RAKS routinely obtained by negotiation with County. As part of its amended counterclaim, RAKS also pleaded a cause of action for prima facie tort. Hertz subsequently amended its petition, reducing its claim to the amount that it paid for the year 2000.

A jury trial was held. Both parties moved for directed verdicts. The trial court granted the motion for a directed verdict in favor of Hertz on RAKS' counterclaim, but otherwise denied the motions. The jury returned a verdict in favor of Hertz on its claim in the amount of $43,925.14 and the trial court entered judgment in favor of Hertz for that amount plus costs. RAKS filed post-trial motions for JNOV and for a new trial. The trial court explicitly denied the motion for a new trial, and apparently did not rule on the motion for JNOV, thereby denying it. RAKS now appeals from the judgment of the trial court.

In its first point relied on, RAKS contends that the trial court erred in denying its motions to dismiss for failure to state a claim and for lack of subject matter jurisdiction. RAKS asserts that section 139.031.5 RSMo (2000) provides an administrative remedy that Hertz failed to exhaust before filing suit against it, and further, that the statutory remedy provided is the exclusive remedy available to Hertz. RAKS also argues that to the extent that section 139.031.5 might permit a private action, it is repugnant to the Missouri Constitution.

Dismissal for lack of subject matter jurisdiction is appropriate when it "appears by the preponderance of the evidence that a court is without jurisdiction." *Brazilia, L.L.C. v. Collector of St. Louis County*, 117 S.W.3d 704, 706 (Mo.App. 2003) (quoting *James v. Poppa*, 85 S.W.3d 8, 9 (Mo. banc 2002)).Whether or not there is subject matter jurisdiction is a question of fact that is left to the sound discretion of the trial court. *Id.*

The initial issue is whether the trial court had subject matter jurisdiction. RAKS argues that section 139.031.5 provides the exclusive remedy for Hertz and also requires that Hertz exhaust the administrative remedies provided therein before filing suit in circuit court. The exhaustion of administrative remedies is a jurisdictional requirement. *Brazilia*, 117 S.W.3d at 706. A circuit court lacks jurisdiction to hear a petition or render a judgment when the administrative remedies available have not been exhausted. *Id.* However, section 139.031.05 is not directly applicable to Hertz's petition. This was not an action for a refund from County for improperly paid taxes, but rather an unjust enrichment action against a different party, RAKS. Nothing in section 139.031.5

indicates that it would apply to such an action, and the general policy considerations behind the requirement that a party exhaust administrative remedies prior to being able to file suit against a governmental entity are not relevant here. The cases cited by RAKS on this issue involving refunds all deal with suits against governmental agencies or officers, not suits for unjust enrichment directed against a non-government affiliated party. Hertz did not need to exhaust administrative remedies that are not applicable to its claim, and section 139.031.5 does not decree that it is the exclusive method for a party claiming unjust enrichment. The trial court did not lack subject matter jurisdiction. RAKS's contention that permitting Hertz's suit is repugnant to the Missouri Constitution will be addressed in our discussion of RAKS's sixth point relied on.

■ We turn now to the trial court's denial of RAKS's motion to dismiss for failure to state a claim. "Review of a motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition." *State ex rel. Diehl v. Kintz,* 162 S.W.3d 152, 155 (Mo.App.2005). It is assumed that all of the averments of the plaintiff are true, and the plaintiff is liberally granted all reasonable inferences therefrom. *Id.* There is no attempt to weigh any facts alleged as to their credibility or persuasiveness. *Nazeri v. Missouri Valley College,* 860 S.W.2d 303, 306 (Mo. banc 1993). Rather, the petition is reviewed in almost an academic manner to determine if the facts alleged meet the

elements of a recognized cause of action, or of a cause of action that might be adopted in the case. *Id.*

■ A claim for unjust enrichment has three elements: a benefit conferred by a plaintiff on a defendant; the defendant's appreciation of the fact of the benefit; and the acceptance and retention of the benefit by the defendant in circumstances that would render that retention inequitable. *Mays–Maune & Associates, Inc. v. Werner Bros., Inc.,* 139 S.W.3d 201, 205 (Mo. App.2004). These elements were met by Hertz's amended petition, which alleged that: it purchased a portion of RAKS' real property at 4545 Woodson Terrace in 1997; County sent tax bills for the property still owned by RAKS to Hertz, which Hertz paid for the 2000 tax year; Hertz paid that tax bill in error, which it realized in 2002; RAKS knew or should have known that it owed real property taxes to County for the 2000 tax year, but failed to inquire as to its failure to receive the tax bill and did not pay it; RAKS has been unjustly enriched by the benefit of Hertz inadvertently paying the 2000 tax bill for RAKS; Hertz did not pay RAKS's tax bills gratuitously, and would not have paid them had it realized that they were for property owned by RAKS; Hertz had demanded repayment from RAKS, which demand RAKS has refused; Hertz conferred a benefit upon RAKS by inadvertently paying its tax bill, which benefit RAKS has accepted, retained and appreciated, and the retention of those benefits without payment to Hertz is inequitable.[3] Under our standard of

**3.** RESTATEMENT (FIRST) OF RESTITUTION section 43 cmt. b. illus. 7 (1937) addresses a situation similar to that in this case in which a party mistakenly pays the property taxes of another as follows: "A receives from the collector of taxes a notification of taxes due, describing lot X which is owned by B. Believing that it describes lot Y owned by him, A pays the tax. A is entitled to restitu-

tion from B." *See also Partipilo v. Hallman,* 156 Ill.App.3d 806, 109 Ill.Dec. 387, 510 N.E.2d 8, 10–12 (1987); *Acme Refrigeration of Baton Rouge, Inc. v. Caljoan, Inc.,* 346 So.2d 743, 745–47 (La.App.1977). In those cases, which are informative, appellate courts held that the mistaken payment of another's property taxes provided a basis for a claim for

review for a motion to dismiss for failure to state a claim, Hertz has adequately pleaded a claim for unjust enrichment. The trial court did not err in denying RAKS's motion. Point denied.

In its second point relied on, RAKS argues that the trial court erred in denying its motion to dismiss for failure to state a claim because "Hertz had no right to seek restitution or reimbursement from RAKS in that it was a volunteer, with possession of full knowledge of all material facts or it was unencumbered with an unlimited opportunity to so inform itself of all facts and nevertheless paid the monies to the County."

▅ RAKS cites to *Ticor Title Insurance Company v. Mundelius*, 887 S.W.2d 726, 728 (Mo.App.1994) for the proposition that a person who voluntarily pays money with full knowledge of the facts cannot recover for unjust enrichment. This is a correct statement of the law. However, Hertz's petition does not state that it made the payment of the taxes for the property voluntarily with full knowledge of the facts. On the contrary, it asserts that the payment was made by mistake because it was not aware of the facts, namely that it was paying taxes for property owned by RAKS. While it may be correct, as RAKS argues, that Hertz had possession of the necessary information to determine that it was paying the taxes for RAKS's property in 2000, that is not the same thing as a voluntary payment made with full knowledge of the facts. Hertz apparently did not utilize the best business practices, but " '[i]t has long been accepted that a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary.' " *Blue Cross Health Services, Inc. v. Sauer*, 800 S.W.2d 72, 76 (Mo.App.

unjust enrichment against the owner of the

1990) (quoting *Western Casualty & Surety Co. v. Kohm*, 638 S.W.2d 798, 801 (Mo.App. 1982)).

Contrary to RAKS's argument on this point, this is not a case of equitable subrogation, and its discussion on this subject is not relevant. Its discussion in the argument portion of its brief that there was no evidence of a mistake introduced at trial, and that Hertz failed to prove that there was unjust enrichment are likewise not relevant to its point relied on that the trial court erred in denying its motion to dismiss for failure to state a claim. The evidence adduced at trial is irrelevant to a trial court's ruling on such a motion. As stated previously "[r]eview of a motion to dismiss for failure to state a claim is solely a test of the adequacy of the plaintiff's petition." *State ex rel. Diehl*, 162 S.W.3d at 155. It is assumed that all of the averments of the plaintiff are true, and the plaintiff is liberally granted all reasonable inferences therefrom. *Id.* Under the standard of review, Hertz's amended petition stated a recognizable claim for relief. Point denied.

In its third point relied on RAKS asserts that the trial court erred in allowing Lee Rushing ("Controller") to testify and also erred in denying its motion for a new trial because Controller did not have personal knowledge of any relevant facts, and Hertz did not identify him as a person with knowledge of any facts pertinent to the case when it responded to RAKS's interrogatories. RAKS contends that Controller's testimony was hearsay, irrelevant, speculative, and constituted surprise that was prejudicial and materially altered the outcome of the case.

▅ Trial courts have broad discretion in administering the rules of discovery. *Kehr v. Knapp*, 136 S.W.3d 118, 122

property.

(Mo.App.2004). Where this Court is analyzing a trial court's actions related to a response to a pre-trial discovery, this Court considers whether the challenged act, under the totality of the circumstances, has resulted in prejudice or unfair surprise. *Id.* (quoting *Siller v. Rivituso–Siller*, 129 S.W.3d 433, 436 (Mo.App.2004)). The trial court's exercise of its discretion should be aimed toward the achievement of fundamental fairness and the avoidance of unfair surprise. *Id.* Likewise, this Court reviews a trial court's denial of a motion for a new trial for abuse of discretion. *Id.* We will not reverse absent a glaring or substantial injustice. *Id.* The trial court has not abused its discretion if reasonable persons can differ about the propriety of the trial court's action. *Id.*

■ At trial, RAKS objected to the testimony of Controller because his identity had not been disclosed in response to its interrogatories. The attorney for Hertz informed the trial court that it had notified RAKS by a letter sent by fax that Controller would testify, but not as an expert. Hertz provided a copy of that letter to the trial court, which examined it and ruled that it would consider the letter to RAKS as an update to the answers filed by Hertz to RAKS's interrogatories. The trial court additionally stated that it would strike the testimony if it developed that Controller did not have any factual knowledge.

■ There was no unfair surprise to RAKS from Controller's testimony. However, that does not answer the question of whether Controller had factual knowledge about the matters to which he testified. Controller testified that he was the controller for Hertz for the north central region and that his primary job consists of business planning and forecasting for the region as well as reviewing operating statements for the area. He stated that he reviews the operating statements for

each of the major locations within his region, which entails examining some balance sheet items and expense items. Controller said that these examinations would cover all taxes for the five state north central region. He testified that he reviewed the records for the amounts paid for three addresses in the St. Louis area, of which two were familiar to him from work. Controller stated that he did not recognize the property when he reviewed records in late 2002, and requested that Hertz's tax department send him further records on the St. Louis properties for which it paid taxes. He said that from his investigation he concluded that while two of the parcels of real property for which Hertz paid taxes were familiar and owned by Hertz, the third one, namely the property involved in this case, was not owned by Hertz. Controller averred that he then requested a tax breakdown for all of the properties and that he consulted the regional vice-president. Controller stated that he had the tax department for Hertz do more research on the property, and that department determined that Hertz was paying taxes on the property that Hertz did not buy.

On cross-examination Controller stated that his job often required that he examine old records and that he sometimes became aware of information in this fashion. He said that he was the person at Hertz who determined that it had erroneously paid taxes on property that it did not own. Controller testified that he knew that it was a mistake that Hertz paid RAKS's taxes, based on ten years of working for Hertz. He averred that it was not Hertz's practice to pay the taxes of others, saying "[i]t's extremely bad business policy to do such a thing."

■ A witness can testify as to custom or practice. *Davis v. Gatewood*, 299 S.W.2d 504, 510 (Mo.1957). "In order for

a witness to be qualified to testify as to the existence of a custom, it should appear that he possesses knowledge thereof and he may be examined to show his means of knowledge and how such knowledge was acquired." *Id.* Controller had sufficient knowledge, and was examined as to his basis for such knowledge and for his testimony. The trial court did not abuse its discretion in permitting Controller to testify, in not striking his testimony, and in denying RAKS's motion for a new trial based on Controller's testimony. Point denied.

In its fourth point relied on, RAKS avers that the trial court erred in submitting Instruction Nos. 6 and 7 to the jury in that the instructions were contrary to law and gave a roving commission to the jury, which errors materially affected the outcome of the trial.

■■■ Hertz contends that RAKS failed to preserve its claims of error regarding Instruction Nos. 6 and 7. To preserve a claim of instructional error for appellate review, counsel is required to make specific objections to the instruction at trial and again raise the error in the motion for a new trial. *See* Rule 70.03; Rule 78.07; *Hatch v. V.P. Fair Foundation, Inc.*, 990 S.W.2d 126, 140 (Mo.App. 1999). RAKS's objections at the instruction conference to Instruction Nos. 6 and 7, while not models of clarity, are sufficiently specific to preserve some of RAKS's claims of error. At the instruction conference, counsel for RAKS did object to the language in Instruction No. 6 "conferred a benefit to" and to the use of "reasonable mistake" in that instruction. However, in its motion for a new trial RAKS did not complain that instruction used the words "unreasonable" and "reasonable mistake." Hence RAKS did not preserve all of the errors regarding Instruction No. 6 that it asserts in its sixth

point relied on. Regarding Instruction No. 7, counsel for RAKS did object at the instruction conference that "voluntariness" addressed lack of coercion rather than the knowledge that a party did or did not have at the time that a mistake occurred, and did raise this point in the motion for a new trial, and that assertion of error is preserved. However, RAKS did not object at the instruction conference and did claim in its motion for a new trial that Instruction No. 7 gave the jury a "roving commission" and that particular assertion of instructional error is not preserved. We will, however, review *ex gratia* the unpreserved claims of error as well as those claims properly preserved.

■■■ Where no applicable MAI instruction exists, the instruction that is given must be brief, simple, and free from argument. Rule 70.02(b); *Gurley v. Montgomery First National Bank*, 160 S.W.3d 863, 869 (Mo.App.2005). Accordingly, an instruction will not submit to the jury or require findings of detailed evidentiary facts. *Id.* To reverse for prejudicial instructional error, the instruction must have misdirected, misled, or confused the jury, and the test is whether an average juror would properly understand the applicable rule of law being conveyed by the instruction. *Id.*

■■■ Instruction No. 6 states that:

Your verdict must be for Plaintiff, The Hertz Corporation, if you believe:

First, Plaintiff conferred a benefit to Defendant by paying the 2000 Real Property Taxes for the property located at 4545 Woodson; and

Second, Plaintiff conferred said benefit by reasonable mistake; and

Third, it would be unreasonable to allow Defendant to retain the benefit:

Unless you believe Plaintiff is not entitled to recover by reason of Instruction No. 7.

Instruction No. 7 states that:

Your verdict must be for Defendant, RAKS Hospitality, Inc., if you believe Plaintiff paid the 2000 Real Property Taxes for 4545 Woodson voluntarily with knowledge of the facts.

▄▄▄ In the instruction conference, the trial court explained why it used the particular language for each instruction, indicating that the trial court believed that these instructions would not confuse or mislead the average juror. These instructions are simple and brief, and they do follow the substantive law. Instruction No. 6 required that the jury find that Hertz conferred a benefit on RAKS that it appreciated, namely the payment of taxes that it should have owed on 4545 Woodson, and that retention of that benefit by RAKS would be inequitable under the circumstances, where Hertz made a reasonable mistake in paying the taxes, i.e., did not do so voluntarily or out of deliberate ignorance. Instruction No. 7 provided a defense, namely that if the jury believed that Hertz voluntarily and knowingly paid the tax on 4545 Woodson, then under those circumstances it would not be inequitable or unjust for RAKS to retain the benefit. There was nothing misleading, misdirecting, or confusing about these instructions to the average juror, nor was this a "roving commission." A jury instruction is a "roving commission" when it assumes a disputed fact or submits an abstract legal question that permits the jury to freely sift through the evidence and choose any facts that suited its fancy or its perception of logic to impose liability. *Lindquist v. Scott Radiological Group,* 168 S.W.3d 635, 653 (Mo.App.2005) quoting *Gomez v. Construction Design, Inc.,* 126 S.W.3d 366, 371 (Mo. banc 2004). An instruction is not a roving commission when the plaintiff's theory of the case is supported by the evidence and the instruction submits ultimate facts which define for the jury the plaintiff's theory. *Id.* There was substantial evidence to support the instructions. Controller testified how he discovered the problem, and that Hertz did not pay the property taxes of others. Jeffrey Parks, an employee of County in its Department of Revenue, Collection Division, testified concerning the taxes and payments thereon for 4545 Woodson, and stated his belief that Hertz made an error in paying the taxes on 4545 Woodson. Documentary evidence showed that the payments were made on 4545 Woodson for the 2000 taxes by Hertz, though it was not the owner of the parcel. As discussed in our analysis of RAKS's second point relied on, a plaintiff can be negligent and still recover for unjust enrichment. *See Blue Cross Health,* 800 S.W.2d at 76; *Kohm,* 638 S.W.2d at 801. The trial court did not err, plainly or otherwise, in submitting Instruction Nos. 6 and 7 to the jury. Point denied.

In its fifth point relied on RAKS contends that the trial court erred in refusing to submit its proposed instructions on affirmative defenses regarding mitigation of damages, negligence, and non-expectation of reimbursement, which resulted in a materially altered result.

▄▄▄ RAKS's proposed instructions were as follows:

Your verdict must be for Defendant if you believe that Plaintiff failed to mitigate any damages that it suffered.

Your verdict must be for Defendant if you believe that Plaintiff's mistake, if any, was as a result of its own negligence or fault.

Your verdict must be for Defendant if you believe that Plaintiff did not expect to be reimbursed.

Hertz asserts that the proposed instructions misstated the law and were not appropriate under the circumstances of the case. RAKS does not cite to any authority in its brief to the effect that those defenses are affirmative defenses to an unjust enrichment action. At most, such defenses would be a consideration in whether the retention of the benefit received by a defendant, in this case RAKS, would be unjust or inequitable, and not in and of themselves an absolute bar to recovery by a plaintiff. This is not a breach of contract action where mitigation of damages is required of a plaintiff, and even if it were, the proposed instruction would be an incorrect statement of the law. Mitigation of damages is not a complete bar to recovery, but rather affects the measure of damages that is recoverable. *See Spencer v. Millstone Marina, Inc.*, 890 S.W.2d 673, 677 (Mo.App.1994). An instruction offered on mitigation that would direct the jury to return a verdict for a defendant instead of directing the jury to reduce damages for a failure to mitigate is an improper instruction, and properly refused by a trial court. *See id.*

RAKS's proposed instruction on Hertz's negligence is also a misstatement of the law. As previously discussed, " '[i]t has long been accepted that a payor's lack of care will not diminish his right to recover, or somehow justify retention of the windfall by an unintended beneficiary.' " *Blue Cross Health*, 800 S.W.2d at 76. The proposed instruction on the lack of expectation of reimbursement appears to be an instruction related to the affirmative defense of voluntary payment with full knowledge of the facts. This defense was already properly given in Instruction No. 7, whereas the proposed instruction fails to take into account whether the payment was truly voluntary and made under full knowledge of the facts rather than through an inadvertent mistake. As such, it mis-

states the law. The trial court did not err in failing to submit the proposed instructions. Point denied.

In its sixth point relied on, RAKS argues that the trial court erred in not declaring section 139.031.5 to be unconstitutional to the extent that it permits a private action to collect taxes, which is repugnant to the Missouri Constitution, Art. X, Sec. 1.

As a preliminary matter, this Court must determine its jurisdictional authority to consider this constitutional challenge. The Missouri Supreme Court has exclusive jurisdiction in all cases involving the constitutional validity of a state statute by virtue of Article V., section 3 of the Missouri Constitution. However, the mere assertion that a statute is unconstitutional does not deprive this Court of jurisdiction. *McCormack v. Capital Elec. Const. Co., Inc.*, 159 S.W.3d 387, 404 (Mo.App.2004). The constitutional claim must be real and substantial, not merely colorable. *Id.* In determining whether a constitutional claim is real and substantial, this Court makes a preliminary inquiry as to whether it presents a contested matter of right that involves fair doubt and reasonable room for disagreement. *Id.* If this initial inquiry reveals that the claim is so legally or factually insubstantial as to be plainly without merit, the claim may be deemed merely colorable. *Id.* This is not an action by a private individual to collect taxes. Rather, it is a recognized private cause of action for unjust enrichment. Accordingly, the claim on this issue is merely colorable, not real and substantial, and we have jurisdiction. This claim is without merit. Point denied.

In its seventh point relied on, RAKS asserts that the trial court erred in directing the verdict against it on its counterclaim because it made a submissible case

in that it presented evidence that Hertz sought to purchase RAKS's portion of the land and Hertz implied that it would retaliate against RAKS for not selling it the land.

In reviewing a trial court's judgment granting a motion for a directed verdict, this Court must determine whether the plaintiff, in the case the counterclaimant, RAKS, made a submissible case. *Dunn v. Enterprise Rent–A–Car Co.,* 170 S.W.3d 1, 3 (Mo.App.2005). "A case should not be submitted to the jury 'unless each and every fact essential to liability is predicated upon legal and substantial evidence.'" *Kenney v. Wal–Mart Stores,* 100 S.W.3d 809, 814 (Mo. banc 2003) (quoting *Washington by Washington v. Barnes Hospital,* 897 S.W.2d 611, 615 (Mo. banc 1995)). In determining whether the plaintiff or counterclaimant has made a submissible case, this Court views the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of all reasonable inferences therefrom and disregarding the opposing party's evidence except to the extent that it aids the plaintiff's case. *Dunn,* 170 S.W.3d at 3. "However, no fact essential to submissibility may be inferred in the absence of a substantial evidentiary basis." *Mprove v. KLT Telecom, Inc.,* 135 S.W.3d 481, 489 (Mo.App. 2004). This Court does not supply missing evidence and does not give a plaintiff or counterclaimant the benefit of speculative, unreasonable, or forced inferences. *Id.* quoting *Davis v. Board of Education of City of St. Louis,* 963 S.W.2d 679, 684 (Mo.App.1998). Liability cannot be based on conjecture, guesswork, or speculation beyond inferences reasonably to be drawn from the evidence. *Id.*

The elements of a cause of action for tortious interference with a business expectancy or relationship are: (1) a contract or valid business relationship or expectancy; (2) the defendant's knowledge of the relationship or contract; (3) intentional interference by the defendant causing or inducing a breach of the contract or relationship; (4) the absence of justification; and (5) damages resulting from the conduct of the defendant. *Weicht v. Suburban Newspapers of Greater St. Louis, Inc.,* 32 S.W.3d 592, 598 (Mo.App. 2000). Missouri courts, while recognizing prima facie torts at least nominally, do not look upon them with favor and have consistently limited the application of the prima facie tort. *See Catron v. Columbia Mutual Insurance Co.,* 723 S.W.2d 5, 6 (Mo. banc 1987); *Kiphart v. Community Federal Savings & Loan Ass'n.,* 729 S.W.2d 510, 516 (Mo.App.1987). The essential elements of a prima facie tort are: an intentional lawful act by the defendant; defendant's intent to cause injury to the plaintiff; injury to the plaintiff; and an absence of any justification or an insufficient justification for the defendant's act. *Thomas v. Special Olympics of Missouri, Inc.,* 31 S.W.3d 442, 449–50 (Mo.App. 2000). In addition, prima facie tort cannot be used when a recognized, nominate tort is otherwise available. *Id.* The doctrine of prima facie tort cannot be utilized to avoid an inability to prove one element of a nominate tort that is otherwise applicable under the facts. *Id.* at 450. There must also be an actual intent to injure, not merely an intent to do the act which may result in the claimed injury. *Id.*

Under either theory, RAKS failed to make a submissible case. There is no evidence of intent on the part of Hertz to interfere with RAKS's relationship with the County or to injure RAKS, and none can reasonably be inferred from the evidence in the record. Such an inference would be speculative, unreasonable, and forced, and liability will not be predicated on this basis. Point denied.

The judgment of the trial court is affirmed.[4]

MARY K. HOFF, P.J., and PATRICIA L. COHEN, J., concur.

---

4. Hertz's motion for costs is denied.