Paula M. GIANELLA, Appellant,

v.

Frank GIANELLA, et al., Respondents.

No. ED 88855.

Missouri Court of Appeals,
Eastern District,
Division Three.

July 17, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 29, 2007.

Application for Transfer Denied
Oct. 30, 2007.

Gary P. Paul, Aaron I. Mandel, Clayton, MO, for respondents.

Jack F. Allen Clayton, MO, for appellant.

Daniel P. Finney, Jr., Daniel C. Lesseg, Saint Louis, MO, for defendants.

## OPINION

GLENN A. NORTON, Presiding Judge.

Paula Gianella ("Sister") appeals the trial court's judgment granting the motion to dismiss Sister's petition asserting tortious interference with an inheritance expectancy filed by Mary Schroeder, Raymond Bruntrager and Bruntrager and Billings, P.C., and joined in by Frank Gianella, Rose Gianella, Andrew Bakota and Brenda Bequette Bakota (collectively "Defendants"). We affirm.

## I. BACKGROUND

Paul Gianella ("Father") died on December 30, 1994, leaving a will devising one-half of his estate to Frank Gianella ("Brother") and the other half to Sister. The will also designated Brother as the executor of the estate. As executor, Brother was directed to sell any and all real estate and personal property owned by Father at his death.

The estate included two parcels of real estate: a home (the "Reber Place Property") and a building (the "Pattison Avenue Property"), which was used for a tavern business. Pursuant to a motion to amend filed by Brother in the probate division, the appraised value of the Reber Place Property was reduced to $20,000 and the appraised value of the Pattison Avenue Property was reduced to $12,500. The appraised value of the personal property used in connection with the tavern business was set at $2,000.

On February 29, 1996, a report of sale was filed with the probate court reciting

the sale of the Reber Place Property for $19,500 and the sale of the Pattison Avenue Property for $12,500. The personal property at Pattison Avenue was sold for $2,000. The Reber Place Property was sold to Brother's sister-in-law and her husband ("the Bakotas"); the Pattison Avenue Property was purchased by John McKay, a co-worker of Brother's wife.

The Bakotas never lived in nor rented out the Reber Place Property. Eventually, the Bakotas conveyed the Reber Place Property to Rose Gianella (Brother and Sister's mother) and Rose executed a beneficiary deed conveying the property to Brother. According to the county assessor records, the value of the Reber Place Property as of January 1, 1999, was $93,789.

Although McKay was the registered owner of the Pattison Avenue Property, Sister alleged that Brother had full and active control and management of the property from the date Father died until May 3, 1999, when the property was conveyed to Pop's Blue Moon, Inc. On May 5, 1999, McKay filed a certificate of value with the county assessor's office stating that the value of the Pattison Avenue Property was $98,000.

Sister previously attempted to recover what she claims to be her rightful share in the estate by asserting numerous claims in the probate division. First, Sister filed four petitions to remove Brother as personal representative, which were all denied. On February 4, 1999, the probate division entered judgment approving the final settlement of the estate and ordering distribution. Sister then filed several motions to set aside the judgment on various grounds, including fraud. The court declined to set aside the judgment and Sister appealed. In the memorandum supporting our order affirming the approval of the final settlement and distribution, this Court found that Sister had abandoned her fraud claim. *In re Estate of Paul Gianella*, 33 S.W.3d 573, Nos. ED76886 & ED77012 at 4 (Mo.App.E.D.2000). *See also In re Estate of Paul Gianella*, 33 S.W.3d 573 (Mo.App. E.D.2000) (order affirming judgment). Thereafter, Sister filed a "motion to disgorge and for damages" in the probate division. In denying the motion to disgorge, the probate court found that Sister lacked standing to bring such an action on behalf of the estate. We affirmed, noting that the appropriate remedy where a personal representative mismanages the estate is for an interested person to move for the representative's removal. *In re Gianella*, 111 S.W.3d 416 (Mo.App. E.D.2003). We also imposed sanctions against Sister and her counsel, finding that Sister's appeal was frivolous. *Id.* at 420.

The probate estate was closed on January 15, 2002, and all appeals were exhausted on August 26, 2003. On August 26, 2005, Sister filed a petition against Defendants asserting a claim of tortious interference with an inheritance. Defendants filed a motion to dismiss on the following grounds: (1) statute of limitations; (2) failure to seek an available remedy in the probate division; (3) collateral attack on the probate division; (4) collateral estoppel and res judicata; (5) the doctrine against splitting a cause of action; (6) lack of standing to sue attorney-defendants; and (7) failure to plead exceptional circumstances that would make ·attorney-defendants liable to a third party.

On December 19, 2005, Judge Hartenbach held a hearing on the motion to dismiss and issued an order giving Sister until January 10, 2006, to file suggestions in opposition and Defendants until January 17, 2006, to file a reply, at which time "the motions [were to] be taken under submission." On December 20, 2005, the case

was reassigned to a different division. Thereafter, Sister's attorney requested a change of judge. The change of judge was granted, and on January 17, 2006, Judge O'Brien was assigned to the case. Despite the fact that the case had been reassigned, on March 9, 2006, Judge Hartenbach issued an order and judgment sustaining the motion to dismiss. On March 23, 2006, Sister filed a motion for declaration of the invalidity of Judge Hartenbach's March 9, 2006, order for lack of jurisdiction. In an order and judgment dated August 8, 2006, Judge O'Brien sustained the motion for declaration of invalidity, finding that "technically the case was submitted to Judge Hartenbach for ruling after ... the case [was] assigned to Division 2[,]" and therefore Judge Hartenbach lacked jurisdiction to issue his ruling. Nevertheless, in his order Judge O'Brien sustained the motion to dismiss "for the reasons stated therein." Sister's petition was dismissed with prejudice. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

■ On review of a motion to dismiss, we assume all of the averments in the petition to be true and the plaintiff is granted all reasonable inferences therefrom. *State ex rel. Diehl v. Kintz*, 162 S.W.3d 152, 155 (Mo.App. E.D.2005). Where the judgment appealed from provides no express reason for granting the motion to dismiss, we assume the court dismissed for a reason set forth in the motion. *Ward v. Bank Midwest, NA*, 871 S.W.2d 649, 650 (Mo.App. W.D.1994). Although Sister raises eight points of error on appeal, we find that they are all without merit and will only discuss her first two points of error, as they are illustrative of the frivolous nature of this appeal.

1. All statutory references are to RSMo 2000.

### B. Statute of Limitations

■ In her first point on appeal, Sister claims that the trial court erred in sustaining the motion to dismiss on statute of limitations grounds. On appeal, Sister argues that a five-year statute of limitations applies to her tortious interference claim. In support of this position, Sister points to the five-year statute of limitations proscribed by section 516.120(4) RSMo 2000,[1] which applies to "[a]n action for taking, detaining or injuring any goods or chattels ...," and by section 516.120(5), which applies to "[a]n action for relief on the ground of fraud." Despite this assertion on appeal, paragraph 24 of Sister's petition admits that "the pertinent limitations period for this case is at least two years." In support of this admission, Sister's petition cites section 472.013, which provides for a two-year statute of limitation on claims of fraud perpetrated in connection with any probate proceeding.

Not only does Sister's petition admit the applicability of section 472.013 to her claim, the five-year statute of limitations provided by section 516.120 does not apply here because there is a more specific limitation applicable to Sister's claim. *See City of Ellisville v. Lohman*, 972 S.W.2d 527, 534 (Mo.App. E.D.1998) (where there are two applicable statutes, the more specific statute applies over the terms of a general statute). While the five-year statute of limitations under section 516.120(5) applies generally to claims of fraud, section 472.013 provides for a more specific limitation applicable to claims of fraud perpetrated in connection with any probate proceeding. Here, Sister's petition alleges a "fraudulent straw party scheme" which occurred during the administration of the probate estate and which allegedly pre-

vented Sister from receiving her rightful share under Father's will. Thus, by Sister's admission, and under the law, the two-year statute of limitations provided by section 472.013 applies to claims asserted here.

Moreover, Paragraph 25 of the petition avers that Sister discovered the "fraudulent straw party schemes" in September 1999 (Reber Place Property) and May 2000 (Pattison Avenue Property). Sister's petition was first filed on August 24, 2005. Sister now argues, however, that the statute was tolled during the pendency of the probate proceeding. Specifically, according to Sister, her "probate remedies were finally exhausted" and her "cause of action in this case accrued" on August 26, 2003, when the Supreme Court of Missouri denied her application for transfer of her appeal on her motion to disgorge and for damages.

The circuit court properly dismissed the action because the petition, on its face, clearly establishes that Sister's claims are barred by the two-year statute of limitations. Additionally, as discussed below, Sister was required to seek an available remedy in probate before pursuing a claim for tortious interference. Sister's claim that the statute was tolled during the pendancy of the probate action is incongruous with the requirement that she must exhaust all remedies in probate before proceeding with her tortious interference claim. In her petition, Sister asserts the same facts and seeks the same remedy as she did in her attempts to set aside the final settlement and distribution of the probate estate. To find that the statute of limitations was tolled during the pendancy of the probate action would effectively eliminate the requirement that one must exhaust all probate remedies before pursuing a civil remedy. Point one is denied.

### C. Failure to seek available remedies in probate

 In her second point on appeal, Sister argues that the circuit court erred in dismissing the complaint on the grounds that her tort claims were barred because she failed to seek an adequate remedy in probate. While Missouri recognizes the tort of intentional interference with an inheritance expectancy, the tort is only available if the plaintiff first attempted to obtain a remedy in probate or is able to show the impossibility of obtaining an adequate remedy in such an action. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 455 (Mo.App. W.D.2004). Sister claims that she fully complied with this requirement by filing a motion to disgorge and for damages in the probate proceeding. We disagree.

 The "adequate remedy" requirement refers to the availability of a procedure under the probate code capable of providing the relief sought in the civil petition. *Brown v. Kirkham*, 23 S.W.3d 880, 885 (Mo.App. W.D.2000). It is inconsequential whether the party is ultimately successful in obtaining the results desired. *Id.* Thus, under this rule, a party may not assert a claim of fraud in the probate division, lose, and thereafter file a civil petition for tortious interference asserting the same facts and seeking to recover the same relief sought in probate. *Id.* Instead, for example,

> tortious interference will lie where plaintiff could not discover the fraud until the probate period had run, where plaintiff was unable to establish a maliciously destroyed will, or where defendant tortiously induced an inter-vivos transfer of estate assets.

*McMullin v. Borgers*, 761 S.W.2d 718, 719 (Mo.App. E.D.1988). In addition, an action for tortious interference is properly brought where the plaintiff did not have

standing to assert a claim of fraud in the probate division. *Graham v. Manche,* 974 S.W.2d 580, 584 (Mo.App. E.D.1998).

In her petition for tortious interference, Sister alleges fraud against the estate and seeks to recover what she claims to be her rightful share of the estate. The allegations in the petition admit that sister had knowledge of the facts upon which she bases of her tort claim during the pendancy of the probate action. Based on the factual allegations and the relief sought, Sister had several avenues available in probate. She could have challenged the acts of Brother and sought his removal as personal representative (which she did several times, unsuccessfully). She could have challenged the sales of the properties, the amount of the sales and the total value of the estate. She was also free to claim fraud (which she did, but ultimately abandoned). That Sister chose an incorrect procedure (filing a motion to disgorge) to pursue her claims does not change the fact that an adequate remedy was available.[2] *Brown,* 23 S.W.3d at 884–85. To allow Sister to proceed on her petition, which asserts the same facts known to and alleged by her in the probate action and which seeks the same relief sought, would effectively allow a collateral attack on the judgment approving the final settlement and distribution of the estate. *Graham,* 974 S.W.2d at 583. Sister's failure to pursue the appropriate remedy in probate bars her tortious interference claim. Point two is denied.

### D. Sanctions

Defendants have filed a motion for damages for frivolous appeal. In their motion, Defendants argue that the matters raised in this appeal and in the trial court below have been adjudicated by the trial court and before this Court on several prior occasions, and therefore this appeal is frivolous. Sister has been sanctioned by the trial court on four separate occasions for filing frivolous claims. Sister and her counsel have previously been sanctioned by this Court for filing a frivolous appeal. *In re Gianella,* 111 S.W.3d at 421. In determining whether sanctions were appropriate in Sister's prior appeal, we stated that her "incessant attempts in the past and present to relitigate this case and her letter to the court professing a similar intention for the future evidences her pledge to engage in further needless litigation." *Id.* In an effort, therefore, to deter Sister from continuing to attempt to relitigate the same issues, we imposed monetary sanctions against both her and her counsel. These prior sanctions have had no effect in deterring Sister and her counsel from filing frivolous litigation.

We find that the appeal currently before this Court is frivolous. The claims that are the subject of this appeal are based on allegations that have been asserted by Sister *ad nausem.* By filing the petition for tortious interference and appealing the dismissal of the petition, Sister and her counsel are attempting another bite at the apple. "[Sister] is not entitled to file action after action until she obtains a result

---

**2.** In fact, the Illinois Court of Appeals addressed this exact issue in an action brought by Sister against McKay. The Illinois Court of Appeals found that Sister had remedies available in the probate division and had even raised the issue of fraud, but ultimately abandoned her fraud claim. *Gianella v. McKay,* No. 04–L–433 (Ill. Ct.App., Fifth District April 6, 2007). The court affirmed the circuit court's order dismissing the complaint, holding that because Sister abandoned her claims in the probate proceedings, she could not claim that she attempted to obtain an adequate remedy in probate or that an adequate remedy in that action was impossible. *Gianella,* No. 04–L–433 slip op. at 6, *citing Brown v. Kirkham,* 926 S.W.2d 197, 201 (Mo.App. W.D.1996).

acceptable to her." *Brown*, 23 S.W.3d at 885. As sanctions for their continued abuse of the court system, we order Sister to pay damages to Defendants in the amount of $2,500 and her counsel, Jack F. Allen, to also pay damages to Defendants in the amount of $2,500.

### III. CONCLUSION

We find that the trial court did not err in granting Defendants' motion to dismiss. Accordingly, we affirm. As sanctions for this frivolous appeal, Sister and her counsel are each ordered to pay $2,500 in damages to Defendants.

LAWRENCE E. MOONEY and KENNETH M. ROMINES, JJ., concur.