**Clyde TOWNSEND, et ux., Respondents,**

v.

**EASTERN CHEMICAL WASTE SYSTEMS and The Government of the District of Columbia, Appellants.**

Nos. WD 65931, WD 65976.

Missouri Court of Appeals,
Western District.

July 3, 2007.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 28, 2007.

Application for Transfer Denied
Oct. 30, 2007.

Kenneth B. McClain, Christopher R. Miller, Independence, MO, Gregory Leyh, Gladstone, MO, Joseph Y. DeCuyper, N. Kansas City, MO, for Respondents.

Thomas B. Weaver, Winston E. Calvert, St. Louis, MO, Casey O. Housley, S. Matthew Burgess, Kansas City, MO, for Appellant Eastern Chemical Waste Systems.

Steven G. Emerson, Thomas H. Davis, Alexander B. Robb, Kansas City, MO, for Appellant The Government of the District of Columbia.

Before SMART, P.J., and EDWIN H. SMITH SMITH and HARDWICK, JJ.

EDWIN H. SMITH, Judge.

Mark V. Soresi, d.b.a. Eastern Chemical Waste Systems (Eastern), and the District of Columbia (DC) appeal from the order of the Circuit Court of Platte County sustaining the motion for new trial of the respondents, Clyde Townsend and his wife, Debra Townsend, as to their claims for damages for personal injuries they allegedly sustained from exposure to hazardous waste, containing polychlorinated biphenyls (PCBs), dioxins, and other chemicals, which claims were submitted to and rejected by the jury. They also appeal from the denial of their motions for a directed verdict, at the close of the plaintiffs' evidence and all the evidence, asserting that the claims against them were barred by the running of the applicable five-year statute of limitations, § 516.120(4).[1] In addition, DC appeals from the trial court's order overruling its motion to dismiss the respondents' claims against it as being barred by the doctrine of sovereign immunity.

Both of the respondents asserted claims against Eastern and DC for general negligence and negligent hiring in the disposal of hazardous waste by Eastern, who was hired by DC for that purpose. As to their general negligence claims against both Eastern and DC, the jury was asked to award the respondents damages for injuries they allegedly sustained as a result of the negligence of the appellants in the "transportation, storage, or disposal" of the hazardous waste. With respect to their negligence claims against DC, the respondents were basing their recovery on their assertion that Eastern was acting as an agent of DC in the disposal of the hazardous waste. As to their claims

---

1. All statutory references are to RSMo, 2000, unless otherwise indicated.

against DC for negligent hiring, the jury was asked to award the respondents damages for injuries they allegedly sustained as a result of DC's negligent hiring of Eastern. Whereas, as to their claims against Eastern for negligent hiring, the jury was asked to award the respondents damages for injuries they allegedly sustained as a result of Eastern's negligent hiring of Tyronne Brown, the driver of the cargo van that was transporting the hazardous waste when Clyde was exposed to it. In addition to the claims submitted to the jury, the respondents also asserted, in their second amended petition, claims for loss of consortium and punitive damages.

Eastern raises what it denominates as three points on appeal. In Point I, it claims that the trial court erred in overruling its motions for directed verdict, at the close of the plaintiffs' evidence and all evidence, on the respondents' claims, because they were barred by the running of the applicable five-year statute of limitations of § 516.120(4), due to their failing to exercise due diligence in obtaining service on Eastern after the filing of their initial petition on December 21, 1990. In Point II, Eastern claims not only that the trial court erred in denying its motions for directed verdict, but that it also erred in sustaining the respondents' motion for new trial. In both points, Eastern claims that the trial court erred because the respondents did not make a submissible case on two of the proof elements of their claims: "that Eastern Chemical did not use ordinary care in the transportation, storage, or disposal of PCBs or dioxins or that the alleged negligence of Eastern Chemical was the proximate cause of plaintiffs' alleged injuries." In Point III, it claims that the trial court erred in sustaining the respondents' motion for new trial because the "circuit court failed to carefully consider the evidence presented at trial."

DC raises five points on appeal. In Point I, it claims that the trial court erred in sustaining the respondents' motion for new trial on their negligence claims against DC, "on the ground that the jury's verdicts are against the weight of the evidence," because "federal environmental laws do not make a hazardous waste generator such as the District of Columbia strictly liable for personal injuries sustained by people … who are exposed to those wastes." In Point II, it claims that the trial court erred in sustaining the respondents' motion for new trial on their negligence claims against it, "on the ground that the jury's verdicts are against the weight of the evidence," because: "Mr. Rasson's testimony was insufficient to be deemed a judicial admission that the District of Columbia knew the Eastern Chemical Waste Systems was incompetent and had been negligent in allowing that company to haul the District of Columbia's hazardous waste to a disposal site." In Point III, it claims that the trial court erred in sustaining the respondents' motion for new trial on their negligence claims against it, "on the ground that the jury's verdicts for DC were against the weight of the evidence," because "the Plaintiffs failed to make a submissible case on essential elements of their claims." In Point IV, it claims the trial court erred in denying its motion to dismiss the respondents' negligence claims against it because the respondents did not comply with the "jurisdictional requirement" of § 12–309 of the D.C. Official Code, which required them, in order to maintain their causes of action against DC, to "within six months of the incident, [have] given notice to the Mayor of the District of Columbia of the approximate time, place, cause and circumstances of the injury." In Point V, it claims that the trial court erred in overruling its motions for directed verdict at the close of the plaintiffs' evidence and all the evidence

because the respondents' claims against DC were time-barred by the applicable five-year statute of limitations of § 516.120(4).

As to Eastern's appeal, we affirm as to Points I and II, and dismiss, for failure to comply with Rule 84.04,[2] as to Point III. As to DC's appeal, we dismiss, because the trial court lacked subject matter jurisdiction over the respondents' claims against DC, due to the failure of the respondents to plead a cause of action on which relief could be granted, as claimed by DC in Point IV, and remand to the trial court to dismiss the respondents' second amended petition against DC.

## Facts

In December of 1985, an electrical transformer leaked transformer fluid, which contained polychlorinated biphenyls (PCBs), onto the 14th Street Bridge in Washington, D.C. DC hired Paul Vignola Electric Company (Vignola) to clean up and dispose of the hazardous waste. After draining the fluid into steel drums, Vignola hired Eastern to transport the drums and the damaged electrical transformer to a federally funded PCB disposal facility located in Kingsville, Missouri. On December 22, 1985, an Eastern cargo van, driven by Tyronne Brown and Michael McIntyre, unloaded the waste at the disposal facility in Kingsville. At some point, some of the hazardous waste was spilled inside the van.

On their return trip from the facility, Brown was driving on Highway 65, north of Sedalia in Pettis County, when Clyde Townsend of the Missouri State Highway Patrol stopped him for speeding. A computer check revealed that Brown's driver's license had been revoked. Clyde arrested Brown for driving with a revoked license.

After he verified that McIntyre had a valid driver's license, he instructed McIntyre to follow him in the van to the Pettis County Sheriff's office in Sedalia.

After arriving at the Sheriff's office, Clyde was talking to McIntyre, who was seated in the van, when he observed what he believed to be a baggie of marijuana on the engine mount. He immediately ordered McIntyre to step out of the vehicle, which he did. He asked McIntyre if the marijuana was his. McIntyre informed him that it was his and Brown's and that they had been smoking a joint just before he pulled them over. Thinking that they might be transporting marijuana, Clyde asked him if he could search the back of the van, and McIntyre consented.

After Clyde had opened the rear door to the cargo area of the van, he put his hands on the bed of the van in an attempt to pull himself up. When he put his hands up on the bed, they landed in some oily substance and a cloud of dust blew in his face. Clyde immediately recoiled into a defensive position and yelled out that his hands and eyes were burning, and went into the Sheriff's office to wash his hands and face. After securing Brown and McIntyre, Sheriff Daryl Buescher went to the bathroom to help Clyde. In the bathroom, while he was washing his eyes and hands, Clyde told Buescher repeatedly that his eyes, chest, and hands were burning. Clyde also observed that his hands and face had turned red. After he was done washing his eyes and face, Clyde questioned Brown about whether there had been a spill in the back of the van. Brown answered that there had been.

Buescher, in inspecting the van, observed that the bed was covered with a

**2.** All rule references are to Missouri Rules of Civil Procedure, 2007, unless otherwise indicated.

grainy substance and that there appeared to be numerous oily spots. Betty Jean Reams, an employee at the Missouri Department of Conservation stationed at the Sheriff's office, also observed upon inspection that the bed of the van was covered with a grainy substance and that there were numerous oily spots.

After completing his shift, Clyde went home and showered. His wife, Debra, helped him in scrubbing his entire body. That night, Clyde took multiple showers, all with the assistance of Debra. Debra gathered up Clyde's uniform and the towels he used so they could be laundered. Clyde's face and hands remained red for several days, with accompanying pain from a burning sensation. He later developed what appeared to be "intense acne" on his face, shoulders, and upper arms. Clyde went to a dermatologist who gave him medication for his "intense acne." After applying the medication for a few weeks, the acne went away.

A few years after the incident, Debra, a registered nurse, noticed that Clyde's liver appeared to be getting larger. At her insistence, Clyde consulted Dr. Allen Parmet, of Saint Luke's Health System, who, after running multiple tests, determined that he had chloracne, an enlarged liver, an enlarged spleen, and an elevated liver enzymes count. Dr. Parmet believed that his medical conditions were likely caused by exposure to PCBs and dioxins. Dr. Parmet advised Clyde that his duties as a Highway State Trooper could result in further injury to his liver and spleen. Based on that advice, Clyde applied for a desk job. After a few weeks, the Highway Patrol informed Clyde that if it reassigned him to a desk job, he would be required to drive his own vehicle to work. Not wanting to commute, Clyde did not take the desk job and, instead, applied for disability based on Dr. Parmet's diagnosis. In considering Clyde's application, the Highway Patrol sent him to Dr. Gerald Ross, a physician at the Environmental Health Center, for further evaluation. He concluded that Clyde's injuries were, in fact, a result of exposure to PCBs and dioxins. Accordingly, Clyde's application for disability was approved.

Around the same time that Clyde was taking disability, Debra developed a pelvic mass. She was referred to Dr. David Myers, a doctor of obstetrics and gynecology (OB–GYN). On his advice, Debra had surgery to remove it. After the surgery, her doctors determined that endometriosis and a fibroid mass had caused her pelvic mass, which were caused by exposure to PCBs and dioxins.

On December 21, 1990, one day prior to the running of the applicable statute of limitations of § 516.120(4), the respondents filed a petition in the Circuit Court of Platte County for damages for personal injuries, which they alleged were caused by Clyde being exposed to hazardous waste during the stop of Eastern's cargo van on December 22, 1985. Without ever having obtained service of process on either Eastern or DC, the respondents voluntarily dismissed their claims on October 15, 1993. On September 27, 1994, pursuant to the savings statute, § 516.230, they re-filed their petition, which alleged two counts. In Count I, Clyde sought recovery for his personal injuries on a negligence claim and a negligent hiring claim. In Count II, Debra sought recovery based on a loss of consortium claim, which was predicated on Clyde's claims in Count I. In October of 1994, both Eastern and DC were served with process. On December 9, 1994, Eastern filed its answer to the respondents' petition. DC, however, did not file an answer; rather, it filed a motion to quash service of the petition for lack of personal jurisdiction.

On March 7, 1996, the respondents filed their first amended petition, alleging four counts. In Count I, Clyde alleged negligence and negligent hiring claims against Eastern and DC for exposure to PCBs and dioxins. In Count II, Debra alleged loss of consortium for Clyde's injuries in Count I. In Count III, Debra alleged her own negligence and negligent hiring claims against Eastern and DC for exposure to PCBs and dioxins from Clyde, and in Count IV, Clyde alleged loss of consortium for Debra's injuries in Count III.

On August 9, 1996, the trial court dismissed DC's motion to quash service for want of prosecution. On September 17, 1997, DC filed a motion for rehearing, which, on January 5, 1998, the court dismissed as untimely. Having dismissed its motion, the court granted DC leave of court to file its answer to the respondents' amended petition on or before January 15, 1998. On January 15, 1998, DC filed its answer, in which it alleged, *inter alia*, that the respondents' claims were barred by the running of the applicable five-year statute of limitations of § 516.120(4).

On April 7, 2005, the respondents filed their second amended petition, alleging five counts, which added Count V, seeking punitive damages. On April 15, 2005, DC filed a motion to dismiss the respondents' claims, alleging that they had failed to state a claim upon which relief could be granted because they did not plead, as required, that they had given DC notice of their injuries, pursuant to § 12–309 of the D.C. Official Code. The trial court denied the motion.

On April 26, 2005, the respondents' case was tried to a jury. At the conclusion of the respondents' evidence and all the evidence, Eastern and DC filed motions for directed verdict on the basis, *inter alia,* that the respondents' claims were barred by the applicable statute of limitations,

which were overruled. The respondents' claims against Eastern and DC for negligence and negligent hiring, in Counts I and III, and, punitive damages, Count V, were submitted to the jury. The jury returned verdicts in favor of Eastern and DC on all counts. On June 6, 2005, the respondents filed a motion for new trial on the basis that, *inter alia,* the jury verdicts were against the weight of the evidence, which was sustained on September 6, 2005.

This appeal follows.

## Eastern's Appeal

### I.

In Point I, Eastern claims that the trial court erred in overruling its motions for directed verdict, at the close of the plaintiffs' evidence and all evidence, on the respondents' claims, because they were barred by the running of the applicable five-year statute of limitations of § 516.120(4), due to their failing to exercise due diligence in obtaining service of process on Eastern after the filing of their petition on December 21, 1990. Specifically, Eastern claims that, despite the fact that the respondents filed their causes of action on December 21, 1990, one day before the statute of limitations expired on December 22, 1990, their causes of action were nonetheless barred, pursuant to § 516.120(4), for a lack of due diligence in obtaining service on Eastern, in that, prior to the dismissal of their initial petition, on October 15, 1993, no attempt was made by the respondents to obtain service of process on Eastern.

Pursuant to § 516.120(4), the respondents had five years within which to file their negligence and negligent hiring claims against Eastern. Rule 53.01 provides: "A civil action is commenced by filing a petition with the court." Here, there is no dispute that the respondents filed their petition with the Circuit Court

of Platte County on December 21, 1990, one day prior to the expiration of the five-year statute of limitations of § 516.120(4). There is also no dispute that they voluntarily dismissed it on October 15, 1993, without making any attempt to obtain service of process on Eastern, and re-filed it, pursuant to the savings statute, § 516.230, on September 27, 1994, obtaining service on Eastern on October 4, 1994. Section 516.230 reads, in pertinent part:

> If any action shall have been commenced within the times respectively prescribed in sections 516.010 to 516.370, and the plaintiff therein suffer a nonsuit, or, after a verdict for him, the judgment be arrested, or, after a judgment for him, the same be reversed on appeal or error, such plaintiff may commence a new action from time to time, within one year after such nonsuit suffered or such judgment arrested or reversed[.]

Eastern claims that despite the fact that the respondents' initial petition was timely filed, their causes of action were nonetheless time-barred by § 516.120(4), because they failed to exercise due diligence in serving process on Eastern, prior to voluntarily dismissing their initial petition, and § 516.230 could not be invoked to save them. The respondents contend, however, that the due diligence requirement was never the law, citing *Kincannon v. Schoenlaub*, 521 S.W.2d 391 (Mo. *banc* 1975), and, even if it was, it was struck by the Missouri Supreme Court in *Ostermueller v. Potter*, 868 S.W.2d 110 (Mo. *banc* 1993), which was decided on December 21, 1993, approximately two months after the respondents voluntarily dismissed their initial petition, but prior to the filing of their subsequent petition, which was filed pursuant to § 516.120(4), such that Eastern's claim as to a lack of due diligence of service is a red herring. Eastern argues, however, that even if *Ostermueller* has no application, that the respondents' causes of

action had already been time-barred, pursuant to § 516.120(4), for a lack of due diligence as to service prior to *Ostermueller* being decided, and thus, as a matter of law, it could not be applied retrospectively to revive the respondents' causes of action.

Prior to amendment in 1972, Rule 53.01 defined the commencement of a lawsuit as "[t]he filing of a petition and suing out of process therein." The 1972 amendment dropped the "and suing out of process therein" language, so it read, as it does now, that: "A civil action is commenced by filing a petition with the court." The prior version of the rule mirrors § 506.110.2, which defines the commencement of a lawsuit as "[t]he filing of a petition in a court of record, or a statement or account before a court not of record, and suing out of process therein. . . ." In interpreting the rule, as amended, and the statute, our appellate courts initially held that the physical filing of the petition with the court only conditionally tolled the running of the statute of limitations. *Peltzman v. Beachner*, 813 S.W.2d 932, 933–34 (Mo. App.1991); *Miller v. Agathen for Christen*, 804 S.W.2d 849, 850 (Mo.App.1991); *Watson v. E.W. Bliss Co.*, 704 S.W.2d 667, 669–70 (Mo. *banc* 1986). For the statute to be tolled, the plaintiff had to exercise due diligence in obtaining service of process upon the defendant. *Peltzman*, 813 S.W.2d at 934. If the plaintiff did not exercise due diligence, then the statute of limitations would continue to run. *Id.*

In *Ostermueller v. Potter*, 868 S.W.2d 110, 111 (Mo. *banc* 1993), the Missouri Supreme Court explicitly abolished the due diligence requirement. The *Ostermueller* Court noted that the "[s]upport exists for superimposing on *Rule 53.01* a requirement that plaintiffs exercise due diligence in the service of process." *Ostermueller*, 868 S.W.2d at 111. The Court rationalized that this requirement

stemmed from the language in § 516.110.2 and the pre–1972 version of Rule 53.01, which both defined commencement as filing of a petition and "suing out of process therein." *Id.* However, the Court pointed out that in 1972, Rule 53.01 was amended to eliminate the "suing out of process therein" language, which caused a disparity between the rule and § 516.110.2. *Id.* The Court, relying on the general rule that when there is such a disparity as to procedural matters, the rule prevails, held that Rule 53.01 controlled, such that to toll the statute of limitations, there was no due diligence of service requirement under the rule as amended. *Id.* Thus, in determining whether the respondents' claims were barred, after they were re-filed under the savings statute, by the expiration of the statute of limitations of § 516.120(4), due to a lack of due diligence of service of process, as claimed by Eastern in this point, the question becomes whether *Ostermueller,* in which the Court struck the due diligence requirement, applies.

■ If Eastern is correct that there was a lack of due diligence of service as to the respondents' claims against it, such that they were deemed barred on that basis at the time they were voluntarily dismissed on October 15, 1993, then for *Ostermueller* to apply, as the respondents contend, would mean that they, necessarily, are arguing that *Ostermueller* should be applied retrospectively to revive claims that were already barred. The law does not permit such a retrospective application. *Doe v. Roman Catholic Diocese of Jefferson City,* 862 S.W.2d 338 (Mo. *banc* 1993). However, as we discuss, *infra,* even assuming, *arguendo,* that Eastern is correct that *Ostermueller* has no application and that the law of due diligence as to service prevails here, such that a lack of due diligence on the part of the respondents in obtaining service on Eastern of their initial petition

could form the basis for the trial court's finding that the respondents' causes of action were time-barred, pursuant to § 516.120, despite being timely filed, that alone would not entitle Eastern to prevail on this point.

■ The bar of the running of the applicable statute of limitations is an affirmative defense, requiring the party asserting it to not only plead it, in accordance with Rule 55.08, but to prove it, as a matter of law. *Damon Pursell Constr. Co. v. Mo. Highway & Transp. Comm'n,* 192 S.W.3d 461, 475 (Mo.App.2006); *Doyle v. Crane,* 200 S.W.3d 581, 585 (Mo.App.2006). Thus, unless the party asserting the affirmative defense of the running of the statute of limitations proves its defense, as a matter of law, the trial court does not err in denying that party's motion for a directed verdict based thereon. Here, while there is no dispute that Eastern properly pled the affirmative defense of the running of the applicable statute of limitations in its answer to the respondents' second amended petition, there is nothing in the record to suggest that the issue of whether the respondents used due diligence in obtaining service of process on Eastern as to their initial petition was ever resolved in its favor such that it proved its affirmative defense of the running of the statute of limitations, as a matter of law, entitling it to a favorable ruling by the trial court on its motion for a directed verdict based thereon.

■ We review *de novo,* as a question of law, the denial of a motion for a directed verdict, asserted on the basis that the non-moving party failed to make a submissible case, viewing the evidence in a light most favorable to the non-moving party. *Damon,* 192 S.W.3d at 475; *Doyle,* 200 S.W.3d at 585. Where, however, as here, we are reviewing the denial of a motion for a directed verdict, asserted on the basis of

an affirmative defense, we review to determine whether the moving party proved below its affirmative defense, as a matter of law. *Id.* Hence, a directed verdict, based on an affirmative defense, should not and cannot be granted, unless there were no factual issues remaining for the fact-finder to decide as to the defense. *Damon,* 192 S.W.3d at 475. While normally "the running of the statute [of limitations] is a question of law for the court to decide ... when contradictory or different conclusions may be drawn from the evidence as to whether the statute of limitations has run, it is a question [of] fact for the jury to decide." *Doyle,* 200 S.W.3d at 585.

Eastern contends that, as a matter of law, because the respondents made no attempt to serve process on it during the thirty-three months their initial petition was pending, it failed the due diligence requirement for service, which existed prior to *Ostermueller.* In other words, Eastern is contending that due diligence of service is simply a function of how much time elapses without service, without consideration of any other factors. It cites no authority for that proposition. Rather, it simply cites decisions where a lack of due diligence has been found for elapsed periods of time between the time of filing and there being no service that are less than the thirty-three months that elapsed in this case. This ignores the well-settled case law that in determining whether there has been a lack of due diligence as to service, relevant factors are: (1) the length of the delay; (2) the facts surrounding the parties' participation in the matter; (3) the length of the statute of limitations; (4) the

available means of obtaining service on the defendant; and (5) the prejudicial effect from the delay of service. *Miller,* 804 S.W.2d at 850–51. And, as we discuss, *supra,* those factors would be for the trier-of-fact.

For the reasons stated, Eastern has failed to carry its burden in this point that, as a matter of law, the statute of limitations of § 516.120(4) worked to bar the respondents' causes of action for a lack of due diligence by the respondents in serving Eastern with process such that the trial court erred in failing to sustain its motion for directed verdict, either at the close of the plaintiffs' evidence or at the close of all the evidence, based thereon.

## II.

■ In Point II, Eastern claims not only that the trial court erred in denying its motions for directed verdict, but that it also erred in sustaining the respondents' motion for new trial. In both, Eastern claims that the trial court erred because the respondents did not make a submissible case on two of the proof elements of their negligence claims:[3] "that Eastern Chemical did not use ordinary care in the transportation, storage, or disposal of PCBs or dioxins or that the alleged negligence of Eastern Chemical was the proximate cause of plaintiffs' alleged injuries." In claiming as it does, Eastern is, obviously, attacking two different rulings of the trial court, the overruling of its motions for directed verdict and the sustaining of the respondents' motion for new trial, as to two separate causes of actions against it, Clyde and Debra's negligence claims, as to

---

**3.** Although Eastern makes no claim in its Point Relied On concerning the respondents' claims against it for negligent hiring, in the argument portion as to its point, it does make some argument as to a lack of a submissible case as to the respondents' negligent hiring claims. However, we will not address that argument since it is well settled that we need not address claims that are not raised in the Point Relied On. *Brizendine v. Conrad,* 71 S.W.3d 587, 593 (Mo. *banc* 2002).

different proof elements, ordinary care and proximate cause, such that technically, it is raising six points. However, because the basis for each is the failure to make a submissible case as to two different proof elements that are common to both claims and would be factually supported by the same evidence in the record, we will treat Eastern's claim in this point as two subpoints, that: (1) There was no evidence in the record supporting the proof element, as submitted to the jury in Instruction No. 12 (Clyde) and Instruction No. 23 (Debra), that "Eastern Chemical Waste Systems failed to use ordinary care in the transportation, storage, or disposal of PCBs, dioxin, or other hazardous chemicals on December 22, 1985;" and (2) There was no evidence in the record supporting the proof element, as submitted to the jury in Instruction No. 12 (Clyde) and Instruction No. 23 (Debra), that Eastern's alleged negligence in the "transportation, storage, or disposal of PCBs, dioxin, or other hazardous chemicals" was the proximate or contributing proximate cause of the respondents' alleged damages for personal injuries.

█ Unless the plaintiff makes a submissible case, the trial court cannot allow his case to go to the jury. *Hertz Corp. v. Raks Hospitality, Inc.*, 196 S.W.3d 536, 549 (Mo.App.2006). And, if a case should not have gone to the jury, because a submissible case was not made, the trial court cannot grant a new trial to the plaintiff where the case went to trial, and the defendant prevailed. *Stehno v. Sprint Spectrum, L.P.*, 186 S.W.3d 247, 250 (Mo. *banc* 2006).

█ To make a submissible case, the plaintiff must present substantial evidence from which the jury can reasonably find each and every element of his claim. *Payne v. City of St. Joseph*, 135 S.W.3d 444, 450 (Mo.App.2004). In determining whether the plaintiff has made a submissi-

ble case, we view the evidence in a light most favorable to the plaintiff, giving him the benefit of all reasonable inferences therefrom and disregarding all contrary evidence and inferences. *Hertz*, 196 S.W.3d at 549. However, the court cannot supply missing evidence, and cannot give the plaintiff the "benefit of speculative, unreasonable, or forced inferences." *Id.* A submissible case "cannot be based on conjecture, guesswork, or speculation beyond inferences reasonably to be drawn from the evidence." *Id.* Whether the evidence in the record supporting a claim is substantial and the inferences to be drawn therefrom are reasonable, are questions of law. *Duncan v. Am. Commercial Barge Line, LLC*, 166 S.W.3d 78, 82 (Mo.App. 2004). We decide questions of law *de novo*. *Commerce Bank, N.A. v. Blasdel*, 141 S.W.3d 434, 442 (Mo.App.2004).

## A. Submissible Case as to Failure to Use Ordinary Care

█ To make a submissible case on their negligence claims against Eastern, the respondents were required to prove, *inter alia*, as instructed by the trial court in Instruction No. 12 (Clyde) and Instruction No. 23 (Debra), the respondents' verdict directors, that "Eastern Chemical Waste Systems failed to use ordinary care in the transportation, storage, or disposal of PCBs, dioxin, or other hazardous chemicals on December 22, 1985." "The particular standard of care that society recognizes as applicable under a given set of facts is a question of law for the courts. Whether a defendant's conduct falls short of the standard of care is a question of fact for the jury." *Thompson v. Brown & Williamson Tobacco Corp.*, 207 S.W.3d 76, 98 (Mo.App. 2006) (quotation marks and citation omitted). In this subpoint, Eastern is claiming that the evidence was insufficient for the respondents to make a submissible case on

the issue of whether Eastern breached its duty of care to the respondents in transporting, handling, and disposing of the hazardous waste generated by DC.

At trial, the respondents contended that Eastern had a duty to exercise ordinary care in the transportation, storage, and disposal of the hazardous waste generated by DC, including preventing any spills of the waste during the course thereof. Eastern does not dispute that fact. The respondents also contended that Eastern breached that duty by spilling the hazardous waste and that, as a result, first Clyde and then Debra were exposed to PCBs and dioxins. Eastern contends that there is no evidence in the record supporting such a breach—that a spill, in fact, occurred, resulting in Clyde and Debra being exposed to the waste. We disagree.

Viewed in a light most favorable to the respondents, there is substantial evidence in the record from which the jury could have reasonably inferred that there was a spill of the hazardous waste in the cargo van being used by Eastern to transport it, resulting in first Clyde's exposure, then Debra's. In that regard, Clyde testified that Brown, the driver of the cargo van, admitted to him that there had been a spill. That evidence alone was sufficient to establish that a spill, in fact, had occurred. Eastern argues that Clyde's testimony should be rejected in our analysis of this issue in that he made no mention of his conversation with Brown until trial. In making that argument, Eastern is asking us to ignore our standard of review, requiring us to view the evidence and reasonable inferences, which may be drawn therefrom, in a light most favorable to the respondents, while ignoring all evidence and inferences to the contrary. *Brockman v. Regency Fin. Corp.*, 124 S.W.3d 43, 46 (Mo.App.2004).

Further evidentiary support for there having been a spill can be found from the testimony of several other witnesses. Both Betty Jean Reams of the Conservation Department and Sheriff Daryl Buescher testified that the floor of the cargo area of the van was covered with a grainy substance and that there were numerous oily spots. William Ewing, an industrial hygienist, testified that this grainy substance was actually "Oil Dry," which is used to absorb oily spills such as hazardous waste. From this evidence, the jury could have reasonably inferred that at some point during Eastern's handling of the hazardous waste, a spill occurred.

### B. Submissible Case as to Proximate Cause

 To make a submissible case on their negligence claims against Eastern, the respondents also were required to prove, *inter alia,* as instructed by the trial court in Instruction No. 12 (Clyde) and Instruction No. 23 (Debra), the respondents' verdict directors, that Eastern's alleged negligence in the "transportation, storage, or disposal of PCBs, dioxin, or other hazardous chemicals" was the proximate or contributing proximate cause of the respondents' alleged damages for personal injuries. In this subpoint, Eastern is claiming that the evidence was insufficient for the respondents to make a submissible case on the issue of whether Eastern's alleged breach of its duty of care to the respondents in transporting, handling, and disposing of the hazardous waste generated by DC was the proximate or contributing proximate cause of the respondents' alleged damages. Specifically, in that regard, Eastern is claiming that the evidence was insufficient for the jury to reasonably find, as required, that: (1) the respondents were, in fact exposed to PCBs or dioxins during the incident; and (2) even assuming that they were exposed to PCBs or diox-

ins, that they had sufficient levels of PCBs or dioxins to have caused their alleged injuries.

As this court stated in *Payne*, 135 S.W.3d at 450–51:

> To establish a causal connection between the alleged negligent act and injury, the plaintiff must show both causation in fact and proximate cause. The test for causation in fact is the "but for" test. The "but for" test for causation provides that the defendant's conduct is a cause of the event if the event would not have occurred "but for" that conduct. Causation in fact is an issue for the jury if sufficient evidence is presented from which the jury could reasonably find that the plaintiff's injury was a direct result of the defendant's negligence. In contrast, the practical test of proximate cause is whether the negligence is an efficient cause which sets in motion the chain of circumstances leading to the plaintiff's injuries or damages. The test is not whether a reasonably prudent person would have foreseen the particular injury, but whether, after the occurrences, the injury appears to be the reasonable and probable consequence of the act or omission of the defendant. Proximate cause is a question of law for the trial court. Evidence of causation must be based on probative facts not on mere speculation or conjecture.

(Internal quotation marks and internal citations omitted.) Our careful reading of the record reflects that there is sufficient evidence in the record for the jury to have reasonably inferred that not only were the respondents exposed to PCBs and dioxins as a result of the alleged spill of the hazardous waste in question, but that such exposure caused their alleged injuries.

In claiming that the respondents did not make a submissible case on the issue of proximate cause because the evidence was not sufficient for the jury to find that they were, in fact, exposed to PCBs and dioxins, Eastern argues that if "Mr. Townsend would have been exposed to PCBs or dioxins sufficient to cause the conditions about which he was complaining, he would have developed chloracne, the concentration of PCBs in his blood would have far exceeded the background levels in the general population, and his symptoms would have decreased over time. However, none of that occurred in this case." Although, Eastern may well be correct that there is evidence in the record that supports its contention, that the respondents were not exposed to PCBs or dioxins that caused their alleged injuries, there is ample evidence in the record for the jury to conclude otherwise.

There is no dispute that at the time Clyde stopped the cargo van being used by Eastern to transport the hazardous waste, it was returning from a disposal facility located in Kingsville, Missouri, having already unloaded its cargo, which consisted of several drums of transformer fluid. Dr. Ross, a board-certified doctor in environmental medicine, testified that the transformer fluid that was transported contained both PCBs and dioxins. That fact was corroborated by the testimony of Ewing, an industrial hygienist. In addition, the respondents introduced Exhibit 130, a report of the United States Department of Health and Human Services entitled, "Toxicological Profile for Chlorinated Dibenzo–p–Dioxin," which concluded that PCB transformer fluid contains chlorinated dibenzo-p-dioxin or dioxins. This evidence, coupled with the respondents' other evidence concerning the stop, the spill, etc., was sufficient for the jury to have reasonably inferred that first Clyde and then Debra were exposed to both PCBs and dioxins.

In claiming that the respondents did not make a submissible case on the issue of

exposure, Eastern does not deny the favorable evidence to the respondents. Rather, it points to other evidence in the record to support its claim. Of course, under our standard of review, as previously stated, that we cannot do. *Brockman,* 124 S.W.3d at 46.

Eastern also claims, with respect to there not being evidence of proximate causation sufficient to make a submissible case, that "[e]ven if plaintiffs had produced substantial evidence that they were exposed to PCBs or dioxins, they failed to produce substantial evidence that such a minimal one-time exposure would have resulted or did result in concentrations sufficient to cause any of their alleged injuries." In that regard, they claim that the expert testimony at trial established that the PCBs and dioxin levels in the respondents' blood were such that they could not have caused the adverse health effects complained of by the respondents. We disagree.

Viewed in a light most favorable to the respondents, there is substantial evidence in the record from which the jury could have reasonably inferred that the respondents' claimed injuries were directly caused by their exposure to PCBs and dioxins on December 22, 1985. At trial, Dr. Ross testified that Clyde had chloracne, an enlarged liver, an enlarged spleen, and elevated levels of liver enzymes. He testified that, in his expert opinion, Clyde's medical problems resulted from exposure to PCBs and dioxins. He also testified that given all the circumstances, it was his expert medical opinion that Clyde's exposure to PCBs and dioxins on December 22, 1985, caused his complained-of injuries. Dr. Parmet echoed Dr. Ross's opinion. That evidence was sufficient to make a submissible case on the issue of causation raised in this sub-point. *See Gentry by Gentry v. Douglas,* 744 S.W.2d 788, 790 (Mo. *banc* 1988) (stating as a general rule that "[i]t has been held that the opinion of one expert witness alone constitutes substantial evidence sufficient to support the granting of a new trial.").

As to Debra's injuries, Dr. Myers, an OB–GYN, testified that Debra suffered from an endometriosis and fibroid mass. He also testified, to a reasonable degree of medical certainty, that, given the facts of the case, it was his expert opinion that by coming into contact with Clyde and his clothing on the date of the incident, Debra was exposed to sufficient levels of PCBs and dioxins to cause her injuries. The expert opinion of Dr. Myers was sufficient to establish a submissible case on the issue of causation. *See id.*

Once again, Eastern does not dispute the evidence favorable to the respondents' case; rather, in claiming as it does, it simply asks us to value its contrary evidence over the respondents'. In other words, Eastern is asking us, once again, to ignore our standard of review, which we cannot do.

Point denied.

### III.

In Point III, Eastern claims that: The circuit court abused its discretion in granting a new trial because the circuit court failed to carefully consider the evidence presented at trial, in that the grounds on which the court relied were either not supported by substantial evidence or were directly contrary to the substantial evidence introduced at trial.

Because Eastern's Point Relied On does not comply with Rule 84.04(d)(1), setting forth the requirements for a proper Point Relied On, it does not preserve a claim of error for our review.

Rule 84.04(d)(1) reads:

(1) Where the appellate court reviews the decision of a trial court, each point shall:

 (A) identify the trial court ruling or action that the appellant challenges;

 (B) state concisely the legal reasons for the appellant's claim of reversible error; and

 (C) explain in summary fashion why, in the context of the case, those legal reasons support the claim of reversible error.

The point shall be in substantially the following form: "The trial court erred in [*identify the challenged ruling or action*], because [*state the legal reasons for the claim of reversible error*], in that [*explain why the legal reasons, in the context of the case, support the claim of reversible error*]."

Thus, the rule requires that each point: (1) identify the trial court's ruling or action being challenged on appeal; (2) state the legal reasons for the appellant's claim of reversible error; and (3) explain why those reasons, in the context of the case, support the appellant's claim of reversible error. *Crawford County Concerned Citizens v. Mo. Dep't of Natural Res.*, 51 S.W.3d 904, 908 (Mo.App.2001). The purpose of the rule is to give both the opposing party and the court notice of the precise matters at issue. *Id.*

 ▮▮▮▮ Eastern's Point Relied On is nothing more than a conclusion and abstract statement of the law, which is not sufficient to meet the requirements of Rule 84.04(d) that a point relied on set out the legal bases for reversal and explain in summary fashion why, in the context of the case, reversal is mandated on the legal grounds asserted. Rule 84.04(d)(4); *see also Lemay v. Hardin*, 108 S.W.3d 705, 709 (Mo.App.2003). A deficient Point Relied On preserves nothing for appellate review and is a ground for us to dismiss

the point on appeal. *Downs v. Dir. of Adult Insts.*, 40 S.W.3d 19, 21 (Mo.App. 2001).

Compliance with Rule 84.04 briefing requirements is mandatory in order to ensure that appellate courts do not become advocates by speculating on facts and on arguments that have not been made. Deficient points relied on force the appellate court to search the argument portion of the brief or the record itself to determine and clarify the appellant's assertions, thereby wasting judicial resources, and, worse yet, creating the danger that the appellate court will interpret the appellant's contention differently than the appellant intended or his opponent understood.

*Hall v. Mo. Bd. of Prob. & Parole*, 10 S.W.3d 540, 544–45 (Mo.App.1999) (quotation marks and citation omitted).

Even if we were to speculate on what Eastern is claiming in this point and were to ignore the briefing violations, we would still not review its claim. That is because, in large part, its argument as to Point III is simply a rehash of the same submissible case arguments it makes in Point II, which we have already rejected.

Point III is dismissed for failing to comply with the briefing requirements of Rule 84.04.

### DC's Appeal

### IV.

DC raises five points on appeal. However, because we find that Point IV is dispositive of its appeal, we address it alone.

In Point IV, DC claims that the trial court erred in denying its motion to dismiss the respondents' claims against it because the respondents did not comply with the "jurisdictional requirement" of § 12–309 of the D.C. Official Code, which re-

quired them, in order to maintain their causes of action against DC, to "within six months of the incident, [have] given notice to the Mayor of the District of Columbia of the approximate time, place, cause and circumstances of the injury." In other words, what DC is really claiming is that the trial court erred in failing to dismiss the respondents' claims against it for failing to state a cause of action upon which relief could be granted because they did not plead a necessary proof element of their claims—compliance with § 12–309, depriving the trial court of subject matter jurisdiction.

 It is well settled that before we can review an issue on the merits, we first must determine our jurisdiction to do so. *Brock v. Blackwood,* 143 S.W.3d 47, 55 (Mo.App.2004). If we lack such jurisdiction, then we must dismiss the appeal of that issue. *Id.* "If the trial court lacked jurisdiction to enter the judgment on which review is sought, then the appellate court lacks jurisdiction to review it on the merits." *Id.* The failure to state a cause of action upon which relief can be granted, as stated in Rule 55.27(a)(6), requires dismissal of the plaintiff's petition. *Id.* This is because the failure to state a claim on which relief can be granted essentially deprives the trial court of jurisdiction to rule on the plaintiff's petition. *Cullen v. Dir. of Revenue,* 804 S.W.2d 749, 750 (Mo. *banc* 1991); *State ex rel. Lambert v. Flynn,* 348 Mo. 525, 154 S.W.2d 52, 57 (1941); *Lake Wauwanoka Inc. v. Spain,* 622 S.W.2d 309, 314–15 (Mo.App.1981). And, necessarily, if the trial court lacked jurisdiction, we have no jurisdiction to review its challenged decision or ruling on the merits. *Brock,* 143 S.W.3d at 55.

 The doctrine of sovereign immunity precludes bringing a lawsuit against the government without its consent. *Ford v. Cedar County,* 216 S.W.3d 167, 170 (Mo.App.2006). In that regard, DC has waived its sovereign immunity and consented to being sued in tort cases so long as, *inter alia,* the plaintiff gives it notice of the injury, pursuant to D.C. Official Code § 12–309, which reads that:

An action may not be maintained against the District of Columbia for unliquidated damages to person or property unless, within six months after the injury or damage was sustained, the claimant, his agent, or attorney has given notice in writing to the Mayor of the District of Columbia of the approximate time, place, cause, and circumstances of the injury or damage. A report in writing by the Metropolitan Police Department, in regular course of duty, is a sufficient notice under this section.

Section 12–309 imposes a notice requirement on everyone with a tort claim against DC. *Brown v. D.C.,* 853 A.2d 733, 736 (D.C.2004). However, it is not a statute of limitations, which can be tolled due to the failure to discover rule. *Id.* at 736–37. The six-month clock begins to run the instant the injury is sustained. *Id.*

 Initially, we must determine whether the trial court, here, was bound to follow § 12–309. In that regard, the United States Supreme Court has stated that there is no federal constitutional impediment to a state being sued in a court of another state. *Nevada v. Hall,* 440 U.S. 410, 99 S.Ct. 1182, 59 L.Ed.2d 416 (1979); *Ramsden v. State of Illinois,* 695 S.W.2d 457, 459 (Mo. *banc* 1985). That is because the various states of the nation are, in many respects, entirely separate legal sovereigns and, as such, no state can demand that its laws have effect beyond the limits of its sovereignty. *Greenwell v. Davis,* 180 S.W.3d 287, 292 (Tex.App.2005). However, while Missouri is not required to close its courts to suits against other states, this court has previously held that in the inter-

est of comity, Missouri courts will enforce other states' sovereign immunity statutes. *Ramsden,* 695 S.W.2d at 459; *see also Fruin–Colnon Corp. v. Mo. Highway & Transp. Comm'n,* 736 S.W.2d 41, 44 n. 7 (Mo. *banc* 1987). Hence, to succeed on their claims against DC, the respondents had to have given the notice required by § 12–309.

■ With respect to the notice required, the parties disagree as to whether the notice provision of § 12–309 was an element of their case, which they had to plead and prove, as claimed by DC, or was an affirmative defense that DC was required to plead and prove, as claimed by the respondents. In that regard, the respondents make no argument that the facts pleaded in their amended petition supported an inference that they complied with the notice provision of § 12–309. Rather, they simply argue that the notice provision of § 12–309 is an affirmative defense, which DC waived by failing to include it in its answer. Hence, if DC is correct that compliance with § 12–309 was a proof element of the respondents' claims, then the trial court erred in failing to dismiss their claims for failure to state a cause of action upon which relief could be granted. Thus, in deciding this point, the question becomes whether the notice requirement of § 12–309 was a proof element of the respondents' claims, which they had to plead to state a claim upon which relief could be granted. For the reasons stated, *infra,* we find that it is.

■ In determining the question presented, whether the respondents were required to plead compliance with § 12–309 as an element of their claims, we would normally first have to determine whose law to apply, Missouri's or DC's. However, our research reveals that there is no conflict between the law in Missouri and DC as to the question presented, requiring

us to decide between the two. In that regard, it is well settled in Missouri that sovereign immunity is not an affirmative defense. *Maune v. City of Rolla,* 203 S.W.3d 802, 804 (Mo.App.2006). Rather, it is part of the plaintiff's *prima facie* case. *Id.* Likewise, the highest DC court has held: "Unless [a plaintiff] *demonstrates* compliance with the requirements of § 12–309, a plaintiff's suit against the District is properly dismissed because no right of action or entitlement to maintain an action accrues." *Artis–Bey v. D.C.,* 884 A.2d 626, 632 n. 10 (D.C.2005) (quotation marks and citation omitted) (emphasis added). This is consistent with the court's decision in *District of Columbia v. Arnold & Porter,* 756 A.2d 427, 436 (D.C.2000), in which it held that:

> Section 12–309 ... imposes a notice requirement on everyone with a tort claim against the District of Columbia, and compliance with its terms is mandatory as a prerequisite to filing suit against the District. Moreover, because it is in derogation of the common law principle of sovereign immunity, section 12–309 is to be construed narrowly against claimants. Unless it demonstrates compliance with the requirements of § 12–309, a plaintiff's suit against the District is properly dismissed because no 'right of action' or 'entitlement to maintain an action' accrues.

(Internal quotation marks and citations omitted); *see also Chidel v. Hubbard,* 840 A.2d 689, 695 (D.C.2004); *Campbell v. D.C.,* 568 A.2d 1076, 1078 (D.C.1990) (holding that "notice under § 12–309 is a 'condition precedent' to filing a suit against [DC]."); *Gwinn v. D.C.,* 434 A.2d 1376, 1378 (D.C.1981); *Wilson v. D.C.,* 338 A.2d 437, 438 (D.C.1975).

In claiming that they did not have to plead compliance with § 12–309, in order to state a claim upon which relief could be

granted, the respondents cite two federal decisions: *Lerner v. District of Columbia,* 362 F.Supp.2d 149, 166 (D.D.C.2005); and *Sanders v. District of Columbia,* No. CIV.A. 97–2938, 2002 WL 648965 (D.D.C. April 15, 2002). However, even assuming, *arguendo,* that they stand for the proposition for which they are cited, they are not binding precedent on the trial courts of either this state, *see Patrick V. Koepke Constr., Inc. v. Woodsage Constr. Co.,* 119 S.W.3d 551, 555 (Mo.App.2003), or the District of Columbia Court of Appeals, *see Millard v. Roach,* 631 A.2d 1217, 1224 n. 13 (D.C.1993) (explaining that it "is not bound by decisions of the United States Court of Appeals for the District of Columbia Circuit rendered after February 1, 1971").

Giving the allegations of the respondents' petition their broadest intendment, the standard for determining whether they stated a cause of action against DC, there can be no doubt that they failed to plead compliance with § 12–309. They do not allege any facts, ultimate or otherwise, that they complied with § 12–309. Hence, the trial court lacked subject matter jurisdiction to proceed on their claims against DC. *Brock,* 143 S.W.3d at 56. Accordingly, its order granting the respondents a new trial on their claims against DC is a nullity, depriving us of jurisdiction to proceed on the merits. *Id.* Hence, we dismiss DC's appeal and remand the case to the trial court to dismiss the respondents' second amended petition against DC.

## Conclusion

As to Eastern's appeal, we affirm the trial court's order sustaining the respondents' motion for a new trial, as to its claims against Eastern, and dismiss Point III, for failure to comply with Rule 84.04. As to DC's appeal, we dismiss, because the trial court lacked jurisdiction as to the respondents' claims against DC, due to the failure of the respondents to plead a cause of action on which relief could be granted, as claimed by DC in Point IV, and remand to the trial court to dismiss the respondents' second amended petition against DC.

SMART, P.J., and HARDWICK, J., concur.