

# IN THE MISSOURI COURT OF APPEALS
# WESTERN DISTRICT

| | | |
|---|---|---|
| DALE R. LUDWIG, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | WD86326 |
| | ) | |
| MISSOURI SOYBEAN | ) | OPINION FILED: |
| MERCHANDISING COUNCIL, | ) | June 4, 2024 |
| MISSOURI SOYBEAN | ) | |
| ASSOCIATION, and FOUNDATION | ) | |
| FOR SOY INNOVATION, | ) | |
| | ) | |
| Respondents. | ) | |

**Appeal from the Circuit Court of Cole County, Missouri
The Honorable S. Cotton Walker, Judge**

**Before Division Three:** Cynthia L. Martin, Presiding Judge,
Mark D. Pfeiffer and Edward R. Ardini, Jr., Judges

Mr. Dale Ludwig ("Ludwig"), the plaintiff below in a malicious prosecution and

civil conspiracy lawsuit, appeals from the judgment entered by the Circuit Court of Cole

County, Missouri ("trial court"), granting summary judgment in favor of the defendants

below—the Missouri Soybean Merchandising Council ("MSMC"), the Missouri Soybean

Association ("MSA"), and the Foundation for Soy Innovation ("FSI") (collectively "respondents").  We affirm.

Before identifying the relevant factual background and procedural history of this appeal, we first revisit longstanding precedent about appellate briefing requirements, particularly those relating to summary judgment review and the statement of facts on appeal.

On appeal, all briefs must comply with Rule 84.04.[1]  *Lollar v. Lollar*, 609 S.W.3d 41, 45 n.4 (Mo. banc 2020) (citing *Myrick v. E. Broad., Inc.,* 970 S.W.2d 885, 886 (Mo. App. E.D. 1998) (declining to reach the merits of an appeal where appellant failed to comply with Rule 84.04)).  As part of these requirements, appellants must include in the initial brief "a fair and concise statement of the facts relevant to the questions presented for determination without argument.  All statements of facts shall have specific page references to the relevant portion of the record on appeal . . . ."  Rule 84.04(c). Appellants alone bear the burden of providing a statement of facts that includes all facts relevant to the appeal.  *Desai Corp. v. Colony Ins. Co.*, 30 S.W.3d 223, 224 (Mo. App. W.D. 2000) (explaining that neither the appellate court nor respondents should "be responsible for furnishing [the] court with a statement of facts so that [the] appeal may proceed").

The process for providing a Rule 84.04-compliant statement of the factual record on appeal of a summary judgment ruling has further requirements and limitations, to-wit:

---

[1] All rule references are to I Missouri Court Rules – State 2023.

Our review of summary judgment is limited to the undisputed material facts established in the process set forth in Rule 74.04(c); *we do not review the entire trial court record.* We look exclusively to the step-by-step procedure mandated by Rule 74.04 to determine whether there is a genuine issue of material fact.

On appeal, the import of this process is reflected in our briefing requirements. Pursuant to Rule 84.04(c), the appellant's brief must contain a fair and concise statement of the facts relevant to the questions presented for determination without argument. *A statement of facts that fails to identify the material facts established by a motion for summary judgment, or properly denied by the opposing party's response, violates Rule 84.04(c).*

. . . Appellant [bears] the initial duty to recite, fairly and concisely, the relevant facts. [Appellant's] failure to do so is sufficient to merit dismissal.

*Bracely-Mosley v. Hunter Eng'g Co.*, 662 S.W.3d 806, 810-11 (Mo. App. E.D. 2023)

(numerous internal citations and quotations omitted) (emphasis added).

*Appellant's brief fails to set forth the material facts established by Rule 74.04(c)(1) and (2). Appellant's statement of facts does not identify (1) the material facts established by Respondents' motions for summary judgment and Appellant's responses to the motions for summary judgment, or (2) the material facts pleaded in Respondents' motions for summary judgment . . . .*

"Instead of setting forth an account of the facts that correspond to the factual statements in the consecutively numbered paragraphs of Respondent's [] motion for summary judgment, the statement of facts in Appellant['s] brief is simply a recitation of the procedural history, which has been found insufficient for purposes of appellate review." *Wichita Falls [Prod. Credit Ass'n v. Dismang]*, 78 S.W.3d [812,] 815-16 [(Mo. App. S.D. 2002)]; see also *Washington v. Blackburn*, 286 S.W.3d 818, 820 (Mo. App. E.D. 2009) ("Failure to include, in the statement of facts, the facts upon which an appellant's claim of error is based fails to preserve the contention for appellate review . . . [and] constitutes grounds for dismissal of an appeal.").

*Fleddermann v. Casino One Corp.*, 579 S.W.3d 244, 248-49 (Mo. App. E.D. 2019)

(numerous internal citations and quotations omitted) (emphasis added); *see also Murphy*

*v. Steiner*, 658 S.W.3d 588 (Mo. App. W.D. 2022) (where statement of facts does not address the facts pertinent to the trial court's summary judgment ruling, the appeal was dismissed).

In the present appeal, Ludwig's opening brief wholly fails to provide this Court the summary judgment factual record, merely recites the procedural history of the case, and concludes with reference to his self-serving and legally conclusory and argumentative affidavit filed below.

By failing to cite to the specific numbered paragraphs containing the disputed material facts in his initial brief, Ludwig impermissibly invites us to assume the role of his advocate and sift through the entire record to identify any facts and evidentiary support that could potentially defeat the grant of summary judgment. *Alvis v. Morris*, 520 S.W.3d 509, 512 (Mo. App. S.D. 2017) (quoting *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 62 (Mo. App. S.D. 2016)) ("Plaintiff's failure to properly present relevant [Statement of Undisputed Material] *facts* in his [brief's] statement of facts is fatal to his appeal because we 'cannot sift through a voluminous record, separating fact from conclusion, admissions from disputes, the material from the immaterial, in an attempt to determine the basis for the motion without impermissibly acting as advocates.'").

Though there are numerous other briefing deficiencies,[2] we underscore Ludwig's failure to provide a Rule 84.04-compliant factual record as it demonstrates both the

---

[2] Ludwig's points on appeal are multifarious, impermissibly combining claims of erroneous declarations of law with claims of factual dispute. *See City of Aurora v. Spectra Comm'ns Grp., LLC*, 592 S.W.3d 764, 797-98 (Mo. banc 2019) ("Multifarious points preserve nothing for appellate review because they fail to comply with Rule

procedural and substantive flaws with Ludwig's assertions below and on appeal. And, though we would be well within our discretion to dismiss this appeal for the numerous appellate briefing deficiencies, we have elected to exercise our discretion to decipher as best as possible the relevant and material facts dispositive of the trial court's summary judgment ruling, *ex gratia*. *Bracely-Mosley*, 662 S.W.3d at 811; *Courtright v. O'Reilly Auto.*, 604 S.W.3d 694, 706 n.12 (Mo. App. W.D. 2020) ("[This Court] ha[s] the discretion to review non-compliant briefs *ex gratia*.") (internal quotation marks omitted); *Hampton v. Llewellyn*, 663 S.W.3d 899, 902 n.2 (Mo. App. W.D. 2023) (same); *Hink v. Helfrich*, 545 S.W.3d 335, 338 (Mo. banc 2018) ("This Court prefers to dispose of cases on the merits if it can discern the argument being made.").

**Relevant Material Facts Dispositive of the Motion for Summary Judgment**

The United Soybean Board ("USB") is a non-profit "checkoff" organization overseen by the U.S. Department of Agriculture that collects a portion of all sales of soybeans by farmers. The USB uses these funds to market the soybean industry and to invest in industry-related research and development. The USB also provides funds to

---

84.04(d)."). And, instead of using his Reply Brief to respond to the arguments made by respondents, Ludwig attempts to raise new arguments and discusses facts that are nowhere to be found in his opening brief. *See Coyne v. Coyne*, 17 S.W.3d 904, 906 (Mo. App. E.D. 2000) ("[P]oints and arguments omitted from an appellant's brief may not be supplied by a reply brief."); *Arch Ins. Co. v. Progressive Cas. Ins. Co.*, 294 S.W.3d 520, 524 n.5 (Mo. App. W.D. 2009) ("A reply brief is to be used only to reply to arguments raised by respondents, not to raise new arguments on appeal."); *Russell v. Div. of Emp. Sec.*, 43 S.W.3d 442, 444 (Mo. App. S.D. 2001) (points and arguments not raised in the initial brief "may not be supplied by a reply brief" and "are not preserved for appellate review."). Ludwig's new arguments and reliance upon a new rendition of facts that Ludwig details in his reply brief for the first time are not preserved and we do not consider them. As such, we deny the motion to strike Ludwig's reply brief as moot.

affiliated organizations. These organizations include the MSMC, which receives checkoff funds from the USB and uses them to fund local industry-related projects; the MSA, which performs administrative functions for the MSMC; and the FSI, which holds the rights to the research and intellectual property developed through MSMC-funded projects.

In 2013, following complaints from MSA employees of unethical relationships between MSA officers and several companies receiving checkoff funds, the USB retained a national accounting firm, KPMG, to perform a forensic review of MSA's accounting and business practices. After reviewing financial records, interviewing employees, and investigating the alleged relationships, KPMG drafted a report of its findings ("the Forensic Report").

Among many other issues, the Forensic Report specifically identified Ludwig, the then-CEO of MSA, as being involved with several suspicious transactions and abnormal business practices that could constitute breaches of his fiduciary duty to MSA, including: encouraging and entering into transactions on MSA's behalf without disclosing his own personal interest in the other party to the transaction; compensating expenses that did not appear to be business-related or that did not have proper supporting documentation; and selling or leasing MSA assets below fair-market value. In one highlighted transaction, Ludwig failed to disclose that he was on the board of directors of AgBorn Genetics, Inc. ("Agborn Genetics"), before he personally signed a contract on behalf of MSA and FSI to

provide Agborn Genetics with the exclusive right to use all of FSI's proprietary research and intellectual property at an unspecified royalty rate.[3]

After KPMG submitted the Forensic Report to the USB, Ludwig resigned as CEO of MSA. MSA and FSI then filed suit against AgBorn Genetics in 2014 ("the AgBorn Lawsuit") for claims related to the contract identified by the Forensic Report. After a jury trial in 2016, Agborn Genetics was ordered to pay MSA over $600,000 in restitution.

In 2015, the respondents also sued Ludwig and two other former MSA employees for their alleged misconduct[4] under five theories of wrongdoing: breach of fiduciary duty, fraud, negligent misrepresentation, unjust enrichment, and civil conspiracy ("the Ludwig Lawsuit"). After the 2016 verdict in the AgBorn Lawsuit and before trial commenced in the Ludwig Lawsuit, the respondents voluntarily dismissed the Ludwig Lawsuit without prejudice in 2018.

On December 3, 2020, Ludwig sued each of the respondents for five counts of malicious prosecution—one for each theory of liability raised in the Ludwig Lawsuit— and one count of civil conspiracy. On November 1, 2021, respondents filed a motion for summary judgment, arguing Ludwig could not prove the Ludwig Lawsuit was brought without probable cause because the Forensic Report—the same Forensic Report that supported the AgBorn Lawsuit and claims of impropriety by Ludwig and AgBorn—

---

[3] The Forensic Report also documented that Ludwig ignored the MSA board of director's express directives in entering into the contract and took multiple steps to conceal the transaction from MSA's board.

[4] The petition included Ludwig's alleged misconduct with the Agborn Genetics contract.

7

supported probable cause for asserting claims against Ludwig in the Ludwig Lawsuit.

The trial court agreed and granted summary judgment in favor of respondents, determining that Ludwig could not demonstrate the Ludwig Lawsuit was brought without probable cause given the reasonable reliance the respondents placed in the Forensic Report:

> [I]t is uncontroverted that prior to filing the [Ludwig] Lawsuit, KPMG, an independent professional services firm, conducted an investigation and issued a report that revealed the information on which Defendants based the [Ludwig] Lawsuit.  The claims filed against [Ludwig] in the [Ludwig] Lawsuit were based on the information in the KPMG Report.  A reasonably prudent person would have believed and acted under the circumstances as Defendants did in instigating the underlying lawsuit.  Defendants have thus established a right to judgment as a matter of law by showing facts that negate one of the Plaintiff's essential elements, a lack of probable cause.

The trial court also granted summary judgment against Ludwig on the civil conspiracy claim because it was derivative of the malicious prosecution claims.

Ludwig raises three points on appeal.  All three of his points make the same argument—that the trial court erred in concluding the Forensic Report negated the probable cause element of his malicious prosecution and civil conspiracy lawsuit against the respondents.  Therefore, we will address the points together.

**Standard of Review**

"Appellate review of summary judgment is essentially *de novo*." *Tolentino v. Starwood Hotels & Resorts Worldwide Inc.*, 437 S.W.3d 754, 757 (Mo. banc 2014).

> In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper.  Summary judgment is only proper if the moving party establishes that there is no genuine issue as the material facts and that the movant is entitled to judgment as a matter of law. . . . Only genuine

8

disputes as to material facts preclude summary judgment. A material fact in the context of summary judgment is one from which the right to judgment flows.

. . . .

The record below is reviewed in the light most favorable to the party against whom summary judgment was entered, and that party is entitled to the benefit of all reasonable inferences from the record. . . .

In addition, the non-movant must support denials with specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial. Facts not properly supported . . . are deemed admitted.

*Green v. Fotoohighiam*, 606 S.W.3d 113, 115-16 (Mo. banc 2020) (internal citations and quotation marks omitted). "For purposes of Rule 74.04, a 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts. A 'genuine issue' is a dispute that is real, not merely argumentative, imaginary, or frivolous." *ITT Com. Fin. Corp. v. Mid-America Marine Supply Corp.*, 854 S.W.2d 371, 382 (Mo. banc 1993). A defendant may establish a right to summary judgment by demonstrating that there is no genuine issue of "facts that negate *any one* of the claimant's elements facts . . . ." *Id.* at 381.

### Analysis

To succeed on a claim of malicious prosecution, the plaintiff has the burden of proving: 1) commencement of an earlier suit against plaintiff; 2) instigation of the suit by defendant; 3) termination of the suit in plaintiff's favor; 4) *lack of probable cause for the suit*; 5) malice by defendant in instituting the suit; and 6) damages to plaintiff resulting from the suit.

*State ex rel. Police Retirement Sys. of St. Louis v. Mummert*, 875 S.W.2d 553, 555 (Mo. banc 1994) (emphasis added). "Because actions for malicious prosecution are disfavored under Missouri law," the five elements must be demonstrated by the heightened standard

of strict and clear proof. *Clark v. Ruark*, 529 S.W.3d 878, 882 (Mo. App. W.D. 2017). Therefore, a defendant to a malicious prosecution claim "could establish a right to judgment as a matter of law by showing that [the plaintiff] would be unable to provide evidence sufficient to allow the trier of fact to find the existence of *any one* of the elements of malicious prosecution by strict and clear proof." *Impey v. Clithero*, 553 S.W.3d 344, 353 (Mo. App. W.D. 2018) (internal quotation marks omitted) (quoting *Heberlie v. Harriman Oil*, 497 S.W.3d 886, 890 (Mo. App. E.D. 2016)).

Here, the respondents (defendants below) contended—and the trial court agreed—that they are entitled to summary judgment because they have shown facts that demonstrate they had probable cause to bring the underlying suit against Ludwig. Not coincidentally, the respondents point to the same Forensic Report that justified the *successful* effort to sue AgBorn Genetics in the AgBorn Lawsuit—in which the entire basis of the AgBorn Lawsuit revolved around the allegedly fraudulent transaction that Ludwig obligated MSA and FSI to while serving both as the CEO for MSA and as an undisclosed (to MSA and FSI) board member of AgBorn Genetics.

"Probable cause for a civil suit means a reasonable belief in the facts alleged, plus a reasonable belief that the claim may be valid." *Mummert*, 875 S.W.2d at 555. "If it appears that a reasonably prudent person would have believed and acted under the circumstances as did the person who instigated the previous action, then the existence of probable cause is sufficiently established." *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 318-19 (Mo. App. E.D. 2010). The issue of probable cause to bring the underlying lawsuit is separate from the issue of whether the allegations of the underlying lawsuit

10

ultimately proved to be true. *Id.* at 318. "To make a submissible case for malicious prosecution, the plaintiff must prove lack of probable cause for the *entire* proceeding." *Joseph H. Held & Assocs., Inc. v. Wolff*, 39 S.W.3d 59, 63 (Mo. App. E.D. 2001) (internal quotation marks omitted) (quoting 1 Mo. Tort Law, § 3.4 (MoBar 2d ed.1990)). "The separate counts in an underlying petition do not support separate actions for malicious prosecution." *Id.* Thus, if the respondents established probable cause for any of the five counts they brought against Ludwig in the Ludwig Lawsuit, then they were entitled to summary judgment on all counts of Ludwig's present malicious prosecution claims.

In the summary judgment record, the respondents averred they received, reviewed, and relied on the Forensic Report's allegations when bringing the Ludwig Lawsuit against Ludwig[5] simultaneous to the separate AgBorn Lawsuit that MSA and FSI were successfully pursuing upon reliance upon the same Forensic Report.

Also, in the summary judgment record, the respondents expressly itemized the scope and methodology of the investigation performed by KPMG in preparing the Forensic Report and quoted several passages directly from the Forensic Report detailing specific instances of Ludwig's misconduct—including but not limited to the facts

_____

[5] In the summary judgment record, there is an affidavit from the CEO of the respondents specifically referring to the Forensic Report and reliance upon that report in pursuing the litigation. Though Ludwig denied this statement of undisputed fact, Ludwig neither referenced nor attached any support for his denial with "specific references to discovery, exhibits, or affidavits demonstrating a genuine factual issue for trial" on this topic. Thus, this material fact was admitted for purposes of summary judgment analysis. *See Green*, 606 S.W.3d at 116.

11

underlying the successful prosecution of the AgBorn Lawsuit by MSA and FSI. In fact, in preparing the specific allegations of the Ludwig Lawsuit, the respondents pointed out that they mirrored the exact language from the Forensic Report in detailing the scope of Ludwig's alleged misconduct. And, not coincidentally, the respondents further averred in their statement of undisputed material facts that MSA and FSI were able to obtain a judgment against Agborn Genetics in the AgBorn Lawsuit, and the allegations of that lawsuit relied upon the same documented misconduct contained within the Forensic Report—for further support that the Forensic Report's claims were credible (and such credibility persuaded the jury in the AgBorn Lawsuit) and sufficient to establish probable cause.

Ludwig does *not* assert on appeal that the cited allegations from the Forensic Report, if true, would *not* have supported valid legal claims against him. Rather, Ludwig asserts that every fact in the summary judgment record supported by citation to the Forensic Report is controverted because the "Report itself establishes no 'uncontroverted facts.'" Therein lies the fatal defect in Ludwig's reasoning; for, the issue of probable cause to bring the underlying lawsuit is separate and distinct from the issue of whether the allegations of the underlying lawsuit ultimately proved to be true. *Diehl*, 309 S.W.3d at 318. By conflating these two principles, Ludwig's argument misses the mark.

Ludwig's challenge only attacks the *truth* of the Forensic Report's allegations, not whether the Report's allegations provided probable cause for the Ludwig Lawsuit, i.e., the *effect* of the Forensic Report on a reasonably prudent person. The respondents did not allege that the contents of the Forensic Report are true in the summary judgment record.

12

Rather, they alleged they reviewed the Forensic Report and relied upon the reporting details contained therein as quoted in the summary judgment record when suing Ludwig. To the extent Ludwig's challenges are based on disputing the truth of the Forensic Report's allegations, they are ineffective because they are not responsive to the issue of the reasonable reliance placed upon the Forensic Report by the respondents—a reliance proven reasonable by the jury verdict in the AgBorn Lawsuit.[6]

Ludwig's failure to effectively deny the reasonable reliance by the respondents on the Forensic Report's cited contents establishes there is no genuine dispute of fact on the element of probable cause. The portions of the Forensic Report cited by the respondents detail several instances of misconduct that would plainly support valid legal claims by the respondents against Ludwig. These allegations were credible and came from the same report that formed the basis of the successful lawsuit against Agborn Genetics to undo a harmful contract that Ludwig approved as the agent of MSA and FSI. The passages within the Forensic Report, as accurately cited in the summary judgment record, would have led a reasonably prudent person to believe in the validity of a legal claim against Ludwig. Therefore, the respondents had probable cause to bring the Ludwig Lawsuit,

---

[6] Even if the ultimate factual accuracy of the Forensic Report's claims were relevant here, Ludwig's denials are still ineffective because they are not supported by competent evidence. Legal conclusions stated in an affidavit are inadmissible and cannot establish a genuine issue of fact. *Jordan v. Peet*, 409 S.W. 553, 561 (Mo. App. W.D. 2013) ("If 'conclusions of law' cannot be relied upon to support summary judgment when set forth in an affidavit, they cannot be relied upon when set forth as uncontroverted facts that were purportedly drawn from affidavits or witness statements."). Ludwig's sole evidence supporting his denials of the Forensic Report's itemization of misconduct comes from his own affidavit, which contains only a broad, conclusory denial of any wrongdoing without any supporting facts.

13

defeating an essential element of Ludwig's malicious prosecution claim. Defendants were entitled to summary judgment on the malicious prosecution claim.[7]

Civil conspiracy has five elements under Missouri law: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged." *Rice v. Hodapp*, 919 S.W.2d 240, 245 (Mo. banc 1996). Because the respondents demonstrated that they did not engage in the alleged unlawful objective, i.e., malicious prosecution, they were also entitled to summary judgment on the civil conspiracy claim. *See State ex rel. Diehl v. Kintz,* 162 S.W.3d 152, 156 (Mo. App. E.D. 2005) ("A civil conspiracy claim is not itself actionable in the absence of an underlying wrongful action or tort.").

Points I, II, & III are denied.

---

[7] On the issue of probable cause, Ludwig also claims that the voluntary dismissal of the Ludwig Lawsuit by the respondents should be considered evidence that the Ludwig Lawsuit was brought without probable cause, thus creating a genuine dispute of material fact. We disagree. Although "a decision on the merits in favor of the plaintiff . . . itself constitutes some evidence of lack of probable cause," *Diehl v. Fred Weber, Inc.*, 309 S.W.3d 309, 319 (Mo. App. E.D. 2010), a voluntary dismissal without prejudice is generally *not* a decision on the merits, *In re Kohler*, 778 S.W.2d 19, 20 (Mo. App. E.D. 1989) ("[G]enerally, the converse is also true—a dismissal without prejudice is not an adjudication on the merits."). Thus, the voluntary dismissal without prejudice of the Ludwig Lawsuit (after obtaining a $600,000 verdict against AgBorn Genetics), without more, is not evidence that the Ludwig Lawsuit was brought without probable cause and cannot establish a genuine dispute of material fact on its own.

**Conclusion**

The judgment of the trial court is affirmed.

_____
Mark D. Pfeiffer, Judge

Cynthia L. Martin, Presiding Judge, and Edward R. Ardini, Jr., Judge, concur.